CLIFTON PARK MANOR, SECTION ONE, Inc., Clifton Park Manor, Section Two, Inc., Clifton Park Manor, Section Three, Inc., Delaware corporations, C. Porter Schutt, Thomas E. Brittingham, Jr., Charles R. Martin and Charles F. Benzel, Plaintiffs,

v.

Norman P. MASON, Federal Housing Commissioner, and Federal Housing Administration, Defendants.

Civ. A. No. 1735.

United States District Court
D. Delaware.
Dec. 19, 1955.

Clair J. Killoran and John Van Brunt (of Killoran & Van Brunt), Wilmington, Del., for plaintiffs.

Leonard G. Hagner, U. S. Atty., Wilmington, Del., and Max L. Kane, Atty., Dept. of Justice, Washington, D. C., for defendants.

LEAHY, Chief Judge.

On July 22, 1955, plaintiffs instituted similar actions both here and in the Delaware Court of Chancery, to enjoin the Federal Housing Administration and its officials from holding a proposed meeting of preferred stockholders for the avowed purpose of assuming control and direction of the corporate plaintiffs. The individual plaintiffs are citizens and residents of the state of Delaware; corporate plaintiffs are Delaware corporations and have their principal place of business in Delaware. The individual defendant was Commissioner of the Federal Housing Administration and in his official capacity is a citizen and resident of the District of Columbia; the Federal Housing Administration is a federal agency operating under an Act of Congress.

On July 27, 1955, this court denied plaintiffs' motion for preliminarily injunctive relief [1] and stayed our CA No. 1734 in order to permit the state action in the Court of Chancery to proceed. On the same day, July 27, 1955, government-defendants removed the Chancery Court action to this district court. On July 28, 1955, plaintiffs served a motion to remand the removal action to the state court.

The motion to remand by plaintiffs poses two questions. First, whether the action was one properly removed by the government to this court; and second, if it was, whether the court should exercise its discretionary power to decline its jurisdiction over this particular controversy.

1. Plaintiffs' original actions in both the federal and state courts were founded on the National Housing Act, of which 12 U.S.C.A. § 1702 provides, in part: "The Administrator shall, in carrying out the provisions of this subchapter and subchapters II, III, and VI, be authorized, in his official capacity, *to sue and be sued* in any court of competent jurisdiction." [2] Jurisdiction in the federal court was based on the existence of a federal question and diversity of citizenship. 28 U.S.C. §§ 1331, 1332(a) (1).

Defendants removed to this court under 28 U.S.C. § 1441 and § 1442. Section 1441 provides, in part: "(a) *Except as otherwise expressly provided by Act of Congress,* any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. (b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." [3] Section 1442 provides, in part: "(a) A civil action * * * commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending: (1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office * * *."

2. The question is whether § 1702 of 12 U.S.C.A. constitutes a waiver not only of immunity to suit but of the government's statutory right to removal. In recent years statutory inroads have been made on the doctrine of sovereign immu-

---

1. See Clifton Park Manor, Section One, Inc. v. Mason, D.C.Del., 137 F.Supp. 324.

2. Emphasis added.

3. Emphasis added.

nity; but it has not been extended by the courts more broadly than authorized.[4] Nor have coincident rights, such as the right to removal, been unnecessarily hampered in the absence of express provisions.[5] Indeed, in granting concurrent jurisdiction Congress has never been backward in denying the right to removal expressly when it has deemed it advisable. Thus, removal from the state to the federal court of civil actions against a railroad under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., and against a common carrier under the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq.,[6] and by seamen under the Jones Act,[7] has been restricted in positive terms. The attempt to read an implied waiver of the right to removal into the Fair Labor Standards Act has also been unsuccessful. The act provides that an "action to recover such liability may be maintained in any court of competent jurisdiction." [8] The word "maintained" was deemed by those courts granting remand to prevent the removal of actions brought in state courts because it connoted not merely the commencement of suit but "every requisite step in carrying the suit, once commenced, to effect." [9] This ratio has been criticized in later decisions because it does violence to the plain meaning of the act.[10] Absent a more explicit language, say these courts in denying remand, a litigant should not be deprived of the right to remove a case otherwise removable.

■■ Waiver of immunity of § 1702 was considered specifically in Federal Housing Administration Region No. 4 v. Burr, 309 U.S. 242, 60 S.Ct. 488, 490, 84 L.Ed. 724. There, the Supreme Court upheld garnishment proceedings against the government on the theory the phrase "to 'sue and be sued'" embraced all civil process incident to the commencement or continuance of legal proceedings. Although a rule of liberal construction was employed, the Court merely defined the extent to which an individual could pursue his remedy subject, however, to the usual legal hazards, procedural or otherwise, inherent in all litigation. But the Burr case did not impose a judicial strait-jacket on the sovereign's normally existing procedural rights. Right to removal, in this case exercised by the government, is guaranteed by statute and should be accorded the same respect as garnishment secured by the individual. To deny that right, or even to limit it, on the authority of Burr is to stilt its language and misapply the spirit in which it was rendered. The conclusion is § 1702 does not prevent the proper removal

4. United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888; United States v. Waylyn Corporation, D.C.P.R., 130 F. Supp. 783.

5. That Congress required of itself an express mandate is made evident by the language of § 1441(a), the removal statute, wherein its provisions are made applicable in all instances "[e]xcept as otherwise expressly provided * * *." Also see Young & Jones v. Hiawatha Gin & Mfg. Co., D.C.Miss., 17 F.2d 193, 195 (construing the United States Warehouse Act); Bradley v. Halliburton Oil Well Cementing Co., D.C.Okl., 100 F.Supp. 913, 915.

6. 28 U.S.C. § 1445.

7. 46 U.S.C.A. § 688. The Jones Act has been held to incorporate the provisions of the Federal Employers' Liability Act including those against removal. Petterson v. Standard Oil Co. of New Jersey, D.C.S.D.N.Y., 41 F.2d 219.

8. 29 U.S.C.A. § 216(b).

9. Booth v. Montgomery Ward & Co., D.C. Neb., 44 F.Supp. 451, 456. For similar holdings, see Wingate v. General Auto Parts Co., D.C.Mo., 40 F.Supp. 364; Fredman v. Foley Bros., Inc., D.C.Mo., 50 F.Supp. 161; Brantley v. Augusta Ice & Coal Co., D.C.Ga., 52 F.Supp. 158; also see cases cited in Swettman v. Remington Rand, D.C.Ill., 65 F.Supp. 940, 942.

10. Ricciardi v. Lazzara Baking Corporation, D.C.N.J., 32 F.Supp. 956; Owens v. Greenville News-Piedmont, D.C.S.C., 43 F.Supp. 785; Cox v. Gatliff Coal Co., D.C.Ky., 52 F.Supp. 482; Aaker v. Kaiser Co., D.C.Or., 74 F.Supp. 55; Swettman v. Remington Rand, D.C.Ill., 65 F. Supp. 940; and cases cited therein.

of this cause under either § 1441 or § 1442.[11]

3. This was the precise holding of Judge Meaney in Sarner v. Mason, D.C. N.J., 128 F.Supp. 165, where he had the question similarly presented in support of a motion to remand. The fact plaintiffs here initially saw fit to supplement their advocacy in the state court with a companion suit in the federal court is not material and has no bearing on the defendants' statutory right of removal. And the most recent decision is James River Apartments, Inc. v. Federal Housing Administration, D.C.Md., 136 F. Supp. 24, where Judge Watkins held governmental waiver of immunity under § 1702 did not bar removal to federal district court of builder's Maryland state court suit for declaratory judgment that the Federal Housing Administrator had no right to inspect certain of builder's books.

4. Earlier plaintiffs' motion for a preliminary injunction was refused for the reasons, among others, that it called "for the application of Delaware law exclusively" and the necessity "to maintain that delicate balance which should exist between the Federal and State Courts." See D.C.Del., 137 F.Supp. 325, 137, 325. Plaintiffs now request this court to remand the case to the state court of Delaware because the controversy involves Delaware law, i. e., construction of a Delaware certificate of incorporation and the right to declare dividends to plaintiffs' stockholders over the protest of the Federal Housing Administration. Plaintiffs rely on a number of Supreme Court decisions as authorizing the exercise of discretionary power in this court to refuse to hear this cause of action on the ground that purely local questions of state law are involved.

The touchstone of plaintiffs' position is Rogers v. Guaranty Trust Co., 288 U. S. 123, 53 S.Ct. 295, 77 L.Ed. 652, in which the Supreme Court (5 to 3) upheld the District Court in dismissing an action without prejudice on the theory that a court, state or federal, sitting in one state will decline to interfere by injunction with the management of the internal affairs of a corporation organized under the laws of another state. At pages 130–131 of 288 U.S. at page 298 of 53 S.Ct.:

"While the District Court had jurisdiction to adjudge the rights of the parties, it does not follow that it was bound to exert that power. * * * It was free in the exercise of a sound discretion to decline to pass upon the merits of the controversy and to relegate plaintiff to an appropriate forum."

In a vigorous dissent Justice Stone,[12] with Justice Brandeis concurring, favored disposition of the case on its merits in the federal court and, in echoing his earlier sentiments speaking for the Court in Risty v. Chicago, R. I. & P. R. Co., 270 U.S. 378, 387, 46 S.Ct. 236, 240, 70 L.Ed. 641 ("It is the duty of the federal courts, in suits brought in or removed to the district courts, to decide for themselves all relevant questions of state law * * *"), refused to recognize any principle which permitted a federal court in its discretion to decline jurisdiction because it was called upon to decide an unsettled question of state law. Nonetheless plaintiffs in the case at bar submit the Rogers holding supports their broader contention a federal court can and should refuse jurisdiction lawfully acquired where solely questions of state law are involved. It is interesting to follow the historical course of Rogers.

Although *forum non conveniens* was neither applied nor mentioned, the language of the Court in Rogers was peculiarly expressive in resting on "considerations of convenience, efficiency, and justice". It remained for subsequent decisions to bring this rationale into clear focus. Williams v. Green Bay & W. R. Co., 326 U.S. 549, 66 S.Ct. 284, 90 L.Ed.

---

11. As to removal of actions against a federal officer, see, 2 Cyclopedia of Federal Procedure 304–305 (1951).

12. A portent of what later became the majority view of the Supreme Court in the Meredith case, infra.

311, clearly implied disapproval of the expense of Rogers and recognized it, 13 years later, as the only holding of the Supreme Court sanctioning a federal court's refusal to hear a case because it concerned the internal affairs of a corporation foreign to the state where the federal court sat. The ruling of the district court in Williams dismissing the suit, was reversed on the ground the facts did not support a finding of *forum non conveniens*. In order to resolve a lurking conflict between Rogers and Williams, Koster v. (American) Lumbermens Mut. Cas. Co., 330 U.S. 518, 67 S. Ct. 828, 91 L.Ed. 1067, came up on certiorari. In affirming the district court dismissing a derivative suit on the basis of *forum non conveniens,* the Supreme Court distinguished the Williams case on its facts and characterized its holding in Rogers, at pages 527–528, of 330 U.S. at pages 833, 834 of 67 S.Ct., in these terms:

" * * * We are presented 'with no problem of *administration*' of the affairs of a foreign corporation of the sort which would lead a court to decline jurisdiction. * * * There is no rule of law, moreover, which *requires* dismissal of a suitor from the forum on a mere showing that the trial will involve issues which *relate* to the internal affairs of a foreign corporation. *That is one, but only one, factor* which may show convenience of parties or witnesses, the appropriateness of trial in a forum familiar with the law of the corporation's domicile, and the enforceability of the remedy if one be granted. *But the ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice.* * * * There was dis-

agreement in that case as to whether the facts warranted exercise of the discretion but little as to the general rule by which discretion is governed and none as to existence of the power of the court." [13]

Thus, the Supreme Court by its ratio draws the distinction between issues which merely *relate* to internal affairs of a corporation (significant only as one factor in *forum non conveniens*) and issues which affect *administration* of its internal affairs, sufficient of itself to warrant the refusal of jurisdiction.[14] Under the circumstances of the instant case there is no basis, in fact, for either the application of *forum non conveniens* or the existence of a problem of corporate administration. That is not even contended or suggested by plaintiffs here.

5. Whereas the aforementioned Supreme Court cases involved sitting in a foreign state, the situation here concerns remand to the state court of the state wherein the federal court is sitting. To remove this obvious variance and revivify the Rogers doctrine where the corporations are created in the same state where the federal district court sits and where the cause of action arose, plaintiffs cite Snipes v. Youth Argosy, Inc., D.C.Mass., 94 F.Supp. 874. In that case the federal district court passed on to the state court of that district the question of whether under state law the defendant was a charitable corporation. I recognize if facts justify remitting a cause to a foreign state, *a fortiori* similar circumstances warrant its remittance to the state court wherein the federal district court maintains its forum. Propriety of doing so is another question. Thus, a critical fact was present in

---

13. Emphasis added.

14. That Rogers v. Guaranty Trust Co. is understood as an application of *forum non conveniens*, also see the dissent of Justice Frankfurter in an earlier Supreme Court case, Baltimore & O. R. Co. v. Kepner, 314 U.S. 44, 55, 62 S.Ct. 6, 86 L.Ed. 28. But see Justice Reed dissenting in Koster v. (American) Lumbermens Mutual Cas. Co., 330 U.S. 518, 536–538, 67 S.Ct. 828, 91 L.Ed. 1067;

also Allen v. Pyrene Mfg. Co., D.C. N.J., 111 F.Supp. 819, 821. And for the effect of the common law doctrine of *forum non conveniens* on the statutory provision for change of venue in 28 U.S.C. § 1404(a), see All States Freight, Inc. v. Modarelli, 3 Cir., 196 F.2d 1010; Paragon-Revolute Corp. v. C. F. Pease Co., D.C.Del., 120 F.Supp. 488; and Norwood v. Kirkpatrick, 349 U.S. 29, 75 S.Ct. 544.

Snipes which was deemed less persuasive in the state court than in the federal court and which impelled the federal court to cede its jurisdiction—that is, a federal agency had already interpreted the character of the corporation adversely to the defendant.

6. Other instances have prompted the Supreme Court to uphold refusal of a federal district court to hear a cause, notably (1) when it might interfere with state criminal prosecutions, or the collection of state taxes or other fiscal affairs of a state, or local rates of public utilities, or the domestic policy governing state administrative agencies; (2) when a possible conflict might arise between a municipal ordinance and state law; (3) when the litigation of questions of state law would render unnecessary decision of constitutional questions involved; (4) when there exists a recognized and defined public policy.[15] None of these considerations is applicable here.

7. The difficulty, then, with plaintiffs' argument is while they have championed a discretionary power in the federal district courts to decline jurisdiction (a power I in no way refute), they have failed to place themselves within it. Plaintiffs' only contention supporting its motion to remand, that a question purely of Delaware corporation law is involved, is not only unsupported by precedent but clashes with the language of the Supreme Court in Meredith v. City of Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9. There the Court had to consider whether the Court of Appeals rightly declined to exercise its jurisdiction on the ground that decision of the case on the merits turned on questions of state constitutional and statutory law which the decisions of the state courts had left in a state of uncertainty. Mr. Chief Justice Stone, this time (speaking for a 7 to 2 majority) wrote at page 234 of 320 U.S. at page 11 of 64 S.Ct.:[16]

" * * * the difficulties of ascertaining what the state courts may hereafter determine the state law to be do not in themselves afford a sufficient ground for a federal court to decline to exercise its jurisdiction to decide a case which is properly brought to it for decision." Again, at pages 234–235 of 320 U.S. at page 11 of 64 S.Ct.: "In the absence of some recognized public policy or defined principle guiding the exercise of the jurisdiction conferred, which would in exceptional cases warrant its non-exercise, it has from the first been deemed to be the duty of the federal courts, if their jurisdiction is properly invoked, to decide questions of state law whenever necessary to the rendition of a judgment. * * * When such exceptional circumstances are not present, denial of that opportunity by the federal courts merely because the answers to the questions of state law are difficult or uncertain or have not yet been given by the highest court of the state, would thwart the purpose of the jurisdictional act." And finally at page 236 of 320 U.S. at page 12 of 64 S.Ct.: "Congress having adopted the policy of opening the federal courts to suitors in all diversity cases involving the jurisdictional amount, we can discern in its action no recognition of a policy which would exclude cases from the jurisdiction merely because they involve state law or because the law is uncertain or difficult to determine."[17]

---

15. For citations, see e. g., Meredith v. City of Winter Haven, 320 U.S. 228, 235–236, 64 S.Ct. 7; Alabama Public Service Commission v. Southern Railway Co., 341 U.S. 341, 359–360, 71 S.Ct. 762, 95 L.Ed. 1002.

16. See note 12, supra.

17. In Markham v. Allen, 326 U.S. 490, at page 495, 66 S.Ct. 296, at page 299, 90 L.Ed. 256, Chief Justice Stone cited Meredith and reiterated: "The mere fact that the district court, in the exercise of the jurisdiction which Congress has conferred upon it, is required to interpret state law is not in itself a sufficient reason for withholding relief to petitioner." The Meredith decision has been subsequently followed in Forsgren v. Gillioz, D.C.Ark., 110 F.Supp. 647, 651; Paschall v. Mooney, D.C.S.D.N.Y., 110 F.Supp. 749, 751; Foxbilt v. Citizens Ins. Co. of New Jersey, D.C.Iowa, 128 F.Supp. 594, 595; Mogis v. Lyman-Richey Sand & Gravel Corp., 8 Cir., 190

Plaintiffs seek to lessen the significance of Meredith by asserting two factors distinguishing it from the case at bar: (1) no litigation was pending in the state courts in which the questions could be decided, and (2) remittance to the state courts would have caused further delay in a case already pending for more than two years. True, these factors were present in Meredith and are unavailing to the defendants here.[18] But, as the Supreme Court concluded in the Williams case, 326 U.S. at page 557, 66 S.Ct. at page 288, and again in the Koster Case, 330 U.S. at page 528, 67 S. Ct. at page 833, there is no rigid rule to govern discretion, for each decision turns primarily on its facts.

The Court in the Meredith Case, 320 U.S. at page 237, 64 S.Ct. at page 12, in keeping jurisdiction could be referred to no public policy or interest which would be served or any limitation which would traditionally justify a federal court in declining to exercise it. And there is no such circumstance here. On the contrary, there is present a master fact which would justify, even compel, retention of jurisdiction. That is, ignoring possibility of an exclusive federal question, an agency of the national government will be seriously affected by the decision here upon the ultimate issues.[19] This assumes greater significance in this case when the thrust of Meredith upon plaintiffs' lone ground for remand is considered.

8. The theory and practice of diversity jurisdiction has not been without its antagonists. In Lumbermen's Mutual Cas. Co. v. Elbert, 348 U.S. 48, 75 S.Ct. 151, Justice Frankfurter attacked (in a concurring opinion) the perversion of diversity jurisdiction without directly questioning the Court's decision in Meredith.[20] Nevertheless, Meredith is with

F.2d 202, 203; Pierce v. Ford Motor Co., 4 Cir., 190 F.2d 910, 915; and Burt v. Isthmus Development Co., 5 Cir., 218 F.2d 353, 357; explained in Sterling Drug v. Anderson, D.C.Tenn., 127 F. Supp. 511, 512–514; distinguished in Union Carbide & Carbon Corp. v. White River Distributors, D.C.Ark., 118 F. Supp. 541, 551–552; and referred to in Harris v. Connecticut Light & Power Co., D.C.Conn., 125 F.Supp. 395; Cobb v. City of Malden, 1 Cir., 202 F.2d 701; and Franke v. Wiltschek, 2 Cir., 209 F.2d 493, 504 (per Frank, J., dissenting in part).

18. See, however, Justice Frankfurter concurring in Alabama Public Service Commission v. Southern Railway Co., 341 U.S. 341, 361, 71 S.Ct. 762, 774: "But it was never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a State court could entertain it."

19. Much has been made in the briefs of counsel as to whether or not this court is concerned with a "federal question", i. e., whether or not the validity and construction of the National Housing Act, 12 U.S.C.A. § 1701 et seq. and applicable regulations are in issue. It is not necessary to make that determination here since jurisdiction was sufficiently grounded on diversity of citizenship both in the original action by plaintiffs and on removal by defendants. However, it may be pertinent in other respects for, short of determining the existence of a federal question, mere presence of a federal agency formed under a federal act may be some evidence to persuade a federal district court to retain jurisdiction.

20. Compare the statement of Justice Stone, speaking for the Court in Meredith v. City of Winter Haven, 320 U.S. 228, 237, 64 S.Ct. 7, 12, that Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, "did not free the federal courts from the duty of deciding questions of state law in diversity cases. Instead it placed on them a greater responsibility for determining and applying state laws in all cases within their jurisdiction in which federal law does not govern", with that of Justice Frankfurter, concurring in Lumbermen's Mutual Casualty Company v. Elbert, 348 U.S. 48, 56, 75 S.Ct. 151, 156, that "by overruling the doctrine of Swift v. Tyson [16 Pet. 1, 10 L.Ed. 865], despite its century-old credentials, this Court uprooted the most noxious weeds that had grown around diversity jurisdiction. What with the increasing permeation of national feeling and the mobility of modern life, little excuse is left for diversity jurisdiction, now that Erie Railroad Co. v. Tompkins * * * has put a stop to the unwarranted freedom of federal courts to fashion rules of local law in defiance of local law." And see Justice Frankfurter's further quote in note 18, supra.

us and cannot be ignored, for it represents the majority of the Supreme Court, and, absent any expression of Congress, it is with those tools this federal district court must work. For while there is current authority for the contention the rising tide of litigation in the federal district courts can correctly be addressed to their discretionary power, it is important this power be viewed in its proper light, as an outlet from the pressures of circumstance, and not as an escape hatch for a disreputable basis of jurisdiction.

Consequently, plaintiffs' motion to remand to the state court will be denied. An order may be submitted.