Norman P. MASON, as, and in his official capacity as, Federal Housing Commissioner,
and
Farragut Gardens No. 1, Inc., Farragut Gardens No. 2, Inc., Farragut Gardens No. 3, Inc., Farragut Gardens No. 4, Inc., and Farragut Gardens No. 5, Inc., Plaintiffs,

v.

Alexander P. HIRSCH, Henry Hirsch, Morris Kavy, Martin Beneder, Bertram Kavy, Yale Adelsohn, Gladys P. Hirsch, Howard A. Hirsch, Faye Kavy, Gilbert Kavy, Louis Benedek and Myrtle G. Hirsch, Leonore Benedek and Janet Benedek, individually and as trustees, Defendants.

Civ. A. No. 16101.

United States District Court
E. D. New York.
April 13, 1956.
Amended Opinion April 23, 1956.

454

Leonard P. Moore, U. S. Atty., Brooklyn, N. Y., Albert H. Buschmann, Brooklyn, N. Y., Lloyd H. Baker, Brightwaters, N. Y., and Michael W. Graney, Asst. U. S. Attys., Brooklyn, N. Y., of counsel, for plaintiffs.

Schwartz & Frohlich, Arthur H. Schwartz, Everett A. Frohlich, and Stuart G. Schwartz, of counsel, for defendants.

ABRUZZO, District Judge.

This is a motion made by the defendants for a dismissal of the complaint on the ground that Norman P. Mason in his official capacity as Federal Housing Commissioner has no right to bring this action and on the further ground that the Court lacks jurisdiction over the subject matter.

The complaint is civil in nature and seeks to recover funds belonging to each of the five Farragut Corporations, the complaint alleging that these funds were wrongfully paid, transferred, or otherwise disposed of by the defendants. It is claimed in the complaint that the defendants illegally disposed of the sum of $3,158,000 as dividends on the common stock of these five corporations. (NOTE: There is before me for decision an application by the same plaintiff seeking possession of the 29 houses which comprise this so-called Farragut Gardens development on the ground that the defendants in August, 1955, were in default to the extent of $500,000, representing interest and amortization on mortgages amounting to approximately $22,000,000. In that particular action it appears that the original investment by these defendants was $8,000 and the dividends declared amounted to the sum of $3,150,000.)

The complaint is lodged pursuant to the National Housing Act, as amended, Title 12, U.S.C.A. § 1701 et seq., and under Title 28, U.S.C., §§ 1331 and 1345, and other provisions of law. The plaintiff, Norman P. Mason, is a citizen of the District of Columbia and since July 26, 1954, has been acting as the duly appointed Federal Housing Commissioner. The complaint alleges that he was authorized by Act of Congress to exercise the powers of the Federal Housing Commissioner and to sue in the state and federal courts on behalf of the Federal Housing Administration under Title 12, United States Code Annotated, § 1701 et seq.

The five Farragut corporations were organized and are now existing under and by virtue of the laws of the State of New York. Section 608 of the National Housing Act, Title 12, United States Code Annotated, § 1743, was enacted in 1942 in order to relieve the acute housing shortage which then existed. In order to accomplish this, Congress conferred upon the Commissioner power to insure mortgage loans by private lenders to prospective builders. In this particular action approximately $22,000,000 was loaned to the Farragut corporations for which mortgages were given, and in turn the payment of these mortgages was guaranteed by the plaintiff. The corporate charters of the five Farragut corporations, pursuant to the rules and regulations of the National Housing Act, contained clauses and directions not found in any other corporate charters. The clauses contained in the corporate charters at issue were promulgated by the plaintiff and were applicable only to the building of large apartment houses of this type. The plaintiff in this action is directly concerned with the guarantee of these mortgages.

As a result of the payment of these large dividends, the five Farragut corporations were left without a surplus. In August, as a result of the lack of surplus the defaults took place.

(NOTE: In the action for possession by the plaintiff, a provisional order was entered when an application for an injunction was made by the plaintiff, which provided that the rents were to be collected under the dual control of the defendants and a Mr. Kerns representing the Federal Housing Administration, the rents so collected to be disbursed solely for the benefit of this housing project.

No defaults have occurred since that provisional order.)

In accordance with the provisions of the National Housing Act, the Farragut corporations were formed on or about January 25, 1949, and the certificates of incorporation contained these provisions:

"To apply for and obtain * * * from the Federal Housing Commissioner * * * a contract or contracts of mortgage insurance pursuant to the provisions of the National Housing Act as amended, covering bonds, notes and other evidences of indebtedness * * * and any indenture of mortgage * * * securing the same." (Article Second (d) of the Farragut Corporations' Certificates of Incorporation.)

"So long as any property of this corporation is encumbered by a mortgage or deed of trust insured by the Commissioner it shall engage in no business other than the construction and operation of a Rental Housing Project or Projects. [Article Second (d)].

"The total amount of the authorized capital stock of the corporation is five hundred (500) shares, of which one hundred (100) shares having a par value of One Dollar ($1.00) per share shall be designated 'preferred stock' and four hundred (400) shares shall be designated 'Common stock' without par value, which shares of capital stock shall have the preference and restrictions as follows:

\* \* \* \* \* \*

"In the event of any default by the corporation, as hereinafter defined and during the period of such default, the holders of the preferred stock, voting as a class, shall be entitled to remove all existing directors of the corporation and to elect new directors in their stead * * *. [Article Third (E)]."

Paragraph Twelfth of the complaint alleges that the shares of common stock were issued to the defendants and that preferred shares of stock were issued to the Federal Housing Administrator. Paragraph Sixteenth of the complaint alleges that the cost of construction of the 29 buildings which comprise this development was not in excess of $18,113,-987.53. The loan amounted, nevertheless, to $21,719,300 (Paragraph Sixteenth). The dividends were declared out of this surplus (Paragraph Seventeenth). They were paid on the dates contained in Schedule A annexed to the complaint (Paragraph Eighteenth). The certificates of incorporation of each of the Farragut corporations further contain these provisions:

" * * * shares of capital stock shall have the preferences and restrictions as follows:

\* \* \* \* \* \*

"(B) The net earnings of the corporations, after providing therefrom dividends on preferred stock and all reserves hereinafter required, may be applied each year in payment of dividends to common stockholders. [Article Third (B).]

"The corporation shall not without prior approval of a majority of the shares of preferred stock * * * (a) assign, transfer, dispose of or encumber any real or personal property, including rents, except as specifically permitted by the terms of the mortgage * * *. [Article Fourth.]"

The complaint alleges that when these payments were made in the form of dividends these corporations did not have net earnings in the amounts so paid, nor was there any earned surplus (Paragraph Twentieth). These payments were made without the approval of the Federal Housing Administration (Paragraph Twenty-First). The defendants are charged with having prepared high appraisals so that a surplus could be created pursuant to these appraisals (Paragraph Twenty-Second). It is apparent that the plaintiff is going to make the claim that these appraisals were not in fact true appraisals; that as a result of

these appraisals the complaint alleges that the value of the property was increased so that the surplus was created and the payment of dividends thus made (Paragraphs Twenty-Third and Twenty-Fourth). The certificates of incorporation provided for a uniform system of accounts which was never complied with (Paragraph Twenty-Seventh). The payment of these purported dividends was illegal and void pursuant to the rules and regulations of the Federal Housing Administration (Paragraphs Twenty-Seventh and Twenty-Eighth). The plaintiff did not have knowledge of the declaration of these dividends, nor was it apprised in the uniform system of accounting required by the certificates of incorporation that these dividends were paid. (Paragraph Twenty-Ninth.)

The certificates of incorporation provide for removal of existing directors in case of any default by the defendants. In August, 1955, the plaintiff as preferred stockholder called a meeting for the specific purpose of removing the corporations' directors and electing new directors. A majority of the directors who voted the dividends were ousted. Ewald, Brennan and Berman were elected directors. They then held a meeting and elected Ewald as president, Brennan as secretary-treasurer, and Michael Jancovic as vice-president of each of the Farragut corporations.

The plaintiff seeks the return of $3,158,000 (Paragraph Thirtieth). It is academic, of course, that for the purpose of this motion it is not necessary for the Court to determine whether the plaintiff can prove the allegations of its complaint. The Court has gone into the various paragraphs of the complaint and the contentions raised, together with the clauses of the certificates of incorporation, because all of this may assist in the determination of whether or not Mason is a proper party and whether or not this Court has jurisdiction of the subject matter of this complaint.

The main points stressed by the defendants in this motion are as follows:

1. The Federal Housing Commissioner is without standing to maintain this action. He is seeking to recover funds belonging to the Farragut corporations. His only possible interest is as a future creditor of the corporations.

2. The plaintiff's suit is in the nature of a derivative stockholders' suit, therefore, this Court has no jurisdiction of such a suit and even though the Federal Housing Administration owns all of the preferred stock and the Commissioner has the status of a federal officer he would only acquire the same privileges and immunities accorded private stockholders.

3. Section 608 of the National Housing Act, 12 United States Code Annotated, § 1743, or Section 1, 12 United States Code Annotated, § 1702, did not give rise to the right of the instant cause of action.

4. The case does not arise under the Constitution, laws or treaties of the United States, within the meaning of Section 1331, 28 United States Code.

The defendants urge that Norman P. Mason, the Federal Housing Commissioner, should be dropped as a party-plaintiff and the complaint should be dismissed for lack of jurisdiction.

The plaintiff on the other hand contends (1) that the cause of action is not in the nature of a stockholders' derivative action or as a possible future creditor; (2) that there is federal jurisdiction because the matter in controversy arises under the laws of the United States (Title 28, U.S.C. § 1331 and Sec. 608, heretofore alluded to); and (3) that the Federal Housing Commissioner has brought this action in his official capacity pursuant to Section 1 of the National Housing Act, Title 12, United States Code Annotated, § 1702, which provides in part as follows:

"The Commissioner shall, in carrying out the provisions of this subchapter and subchapters II, III, VI–VIII, and X of this chapter, be authorized, in his official capacity, to

sue and be sued in any court of competent jurisdiction, State or Federal."

In analyzing the points raised by both parties it is evident that the certificate of incorporation is a very unusual one. The different sections of the articles of incorporation cover many fields that are not found in the average articles of incorporation. They were dictated solely by the Federal Housing Administration and accepted by the organizers of these five corporations. The defendants were granted permission to build the 29 houses by virtue of authority given to them by the Housing Administration. The applications for mortgages by the defendants were made pursuant to the rules and regulations of the Federal Housing Administration. There was authority to grant mortgages up to 90 per cent of the building costs. That percentage of mortgage money was furnished by outside capital. The payment of the mortgages was guaranteed by the Federal Housing Administration, and it was because of that guarantee that such a large percentage of mortgage money was furnished by outside capital. All of this was done under the direct supervision of the Federal Housing Administration which was a creation of Congress.

Section 1742 of Title 12, United States Code Annotated, provides as follows:

"The Administrator is authorized and directed to make such rules and regulations as may be necessary to carry out the provisions of this subchapter. June 27, 1934, c. 847, Title VI, § 607, as added Mar. 28, 1941, c. 31, § 1, 55 Stat. 61."

The conditions for eligibility for insurance or guarantee of the mortgages are contained in Section 1743(b) (1) of Title 12, United States Code Annotated. Regulations as to the mortgages are contained in Title 24, United States Code, Sections 280.10, 280.14, 280.26, 280.29 and 280.30.

Title 28, United States Code, § 1331 gives rise to civil actions where the amount exceeds $3,000 and where the actions come under the Constitution, laws or treaties of the United States.

Title 12, United States Code Annotated, § 1702, provides in part for suits by the Commissioner, in carrying out the provisions of subchapters I, II, III, VI–VIII and X and authorize him in his official capacity to sue and to be sued in any court of competent jurisdiction, State or Federal. Granted that the Commissioner can be sued, and there does not seem to be any dispute as to that, it would seem to follow reciprocally that the Commissioner has a right to sue.

The Court has found no case directly on the point raised in the complaint, to wit, the return of moneys divided by the stockholders as dividends, the sums of which were not taken out of either profits or surplus as provided for in the certificates of incorporation. There are, however, cases which throw some light on the rights of the Federal Housing Administration and the jurisdiction of this Court as related to that administrative body.

In Loftus v. Mason, D.C.E.D.Va., 207 F.Supp. 139, the plaintiff sought an injunction to restrain the Federal Housing Commissioner from assuming control of the plaintiff's corporation because of a violation of the certificates of incorporation in declaring and paying dividends out of mortgage proceeds. Jurisdiction in the federal court was held proper.

In Sarner v. Mason, D.C.N.J.1955, 128 F.Supp. 165, the court granted summary judgment in favor of the defendant, Norman P. Mason. The Sarner case was removed from a state court to enjoin the Federal Housing Commissioner from holding preferred stockholders' meetings to elect new boards of directors. It was held that the provisions of the National Housing Act authorizing the Housing Commissioner to sue and be sued in any court of competent jurisdiction were applicable, affirmed, 3 Cir., 228 F.2d 176.

In James River Apartments v. Federal Housing Administration, D.C.Md.1955, 136 F.Supp. 24, the Housing Commissioner sought to inspect and examine the

books and records of a corporation such as these Farragut corporations. Jurisdiction in the federal court was held to be proper.

In Clifton Park Manor v. Mason, D.C. Del., 137 F.Supp. 326, the court had before it a petition to remand to the state court an action to restrain the Commissioner from holding preferred stockholders' meetings in order to remove existing members and to elect new members of the board of directors. The old directors had declared dividends which in turn caused a default. The court held that the matter justified, even compelled, retention of jurisdiction in the federal court.

In Seven Oaks v. Federal Housing Administration, 4 Cir., 171 F.2d 947, the court in passing upon the provisions "to sue and be sued" in Section 1702 held that there was no ambiguity in its language and no reason to restrict its meaning. 171 F.2d at page 948.

The theory is also advanced that under Rule 20 of the Federal Rules of Civil Procedure, 28 U.S.C.A., there is a permissive joinder of parties in one action, and Rule 24(b) provides for permission to intervene.

Defendants' cases are all predicated on the theory that this action is in effect a derivative stockholders' suit. In the ordinary derivative stockholders' suit ultimately the suit demands a return of moneys to the corporation. This money would be of benefit to the corporate stockholders and serve as the means of the stockholders obtaining a dividend or increase the value of their stock. The suit at bar does not contemplate any such ultimate end. Admittedly, there is a default. Admittedly, the plaintiff may be called upon to pay under its insurance or guarantee. It is conceded that the Federal Housing Administration holds only preferred stock and its dividend, if any, is a very nominal amount each year. Whatever moneys are directed to be returned to the treasury of these corporations will serve the purpose of curing the defaults now existing. The benefits derived from any recovery in the instant suit would be, therefore, two-fold:

First, the stockholders of common stock would preserve their equity in the buildings upon the curing of the defaults, thus preventing foreclosure of mortgages.

And, secondly, a benefit would inure to the plaintiff, the Federal Housing Commissioner, in that if the defaults are cured and there be no foreclosures the Administration will not be called upon to pay any deficiency judgment that may be obtained by the holders of these mortgages. Mason as head of the Federal Housing Administration has the firm duty of protecting its guarantee or insurance. To effect this end, it seems to the Court to be clear that he is empowered and, in fact, has the duty of prohibiting any illegal dividends or any illegal payments by any of these five corporations. If illegal dividends were declared, it follows that Mason has the right to sue and compel a restoration of moneys so illegally taken.

It is suggested by the defendants that this action properly belongs in the state court. The Court does not agree. The ruling in some of the cases cited above can be aptly applied to the instant motion as to jurisdiction. In the James River Apartments case, supra, it was held, 136 F.Supp. at page 26:

"The plaintiff is seeking to have this right of inspection denied completely or limited 'to the extent authorized by law and then only for the purposes of determining if the complainant has complied with the terms and conditions of said Articles of Incorporation.' To adjudicate such a matter must of necessity require an interpretation of the National Housing Act and of administrative rules and regulations issued pursuant thereto as well as their application to the present factual situation. More is involved than just the construction of the Articles

of Incorporation of a Maryland corporation."

In the Loftus case, supra, the court said:

"That the loans were to be applied only to construction and incidental uses is emphatically implicit in the Act, the rules and regulations, the application for insurance, the loan agreement between the mortgagor and the mortgagee, and in the commitment for insurance. * * *

"*The court is holding also that the use of the funds as dividends seriously offended the charter and the intent of the Congress.*" (Italics supplied.)

In Mason v. Kavy, D.C.E.D.N.Y., 134 F.Supp. 451, this plaintiff moved for a preliminary injunction. The application was withdrawn after the plaintiff was granted a trial preference of the issues presented in its motion. However, Judge Galston ruled on a counter-motion made by the defendants to dismiss the complaint. Judge Galston in ruling upon the Commissioner's right to sue or be sued under the provisions of Section 1702 held, 134 F.Supp. at page 454:

"From this it certainly follows that the Commissioner is authorized to sue in federal district courts to carry out the provisions of the National Housing Act, and the district courts have original jurisdiction of such civil actions which are commenced by the Government, or any agent thereof, expressly authorized to sue, Title 28 U.S.C. § 1345. See Griffin v. United States, 8 Cir., 1948, 168 F.2d 457.

"The argument of the defendants is that no federal question is presented because in violating the Act and the regulations of the Commissioner, defendants may also have violated the state law. But I agree with the answering argument that this contention overlooks the fact that the Commissioner is a special kind of stockholder who is given special rights and the prerogative of

preserving those rights under the National Housing Act and the regulations which were formulated thereunder, and hence is qualified to institute this federal action."

The only case passed upon by an Appellate Court dealing with the right of the Commissioner to sue or be sued, that this Court has been able to find, is the opinion of the United States Circuit Court of Appeals for the Third Circuit in Sarner v. Mason, supra. There it was held, 228 F.2d at pages 178–179:

"We cannot follow the argument and, if it be seriously made, it is sufficient to point out that, in enacting Section 1702, Congress intended to permit the Commissioner to sue, and, waiving sovereign immunity, to permit him to be sued in actions arising under the National Housing Act in any court of competent jurisdiction. See Korman v. Federal Housing Administration, 1940, 72 App.D.C. 245, 113 F.2d 743. * * *"

The points raised by the defendants on this motion, therefore, must be overruled and the motion denied.

### Amended Opinion

On page 13 of the decision of this Court [140 F.Supp. 458] reference is made to a default on the payment of the interest and amortization of mortgages. The defendants contend that there is nothing in the complaint with respect to this default. A careful reading of the complaint indicates that this is so. Nevertheless, the decision does not rest upon the default so alluded to and could be termed superfluous but not necessary.

The reference to the default on the payment of amortization and interest on pages 3 and 4 [140 F.Supp. 454] is factual. It is stated in the opinion on page 4 that in the application for injunction and dual control by the Government the testimony taken in open court indicates there is no dispute that there does exist at the present time defaults of over $500,000. The complaint in the instant suit contains allegations that would per-

460

mit the offer of this proof. The complaint could be amended without objection on the trial, for these facts have been known since the trial of the injunction suit. Rule 15(b).

The motion for reargument is denied. Nothing new is alleged that was not before the Court on the original motion except the matter of default which has just been dealt with.

Submit order.