UNITED STATES of America et al., Appellants,

v.

H. R. LeMAY et al., Appellees.

No. 19978.

United States Court of Appeals
Fifth Circuit.

Sept. 10, 1963.

Housing Administration (the Commissioner), North Shepherd Terrace Apartments, Inc. (North Shepherd), The 74 Corporation (74) and The 56 Corporation (56) appeal from an order striking the United States and the Commissioner as parties plaintiff and dismissing the cause, "there being no diversity of citizenship or other grounds of Federal jurisdiction as to the remaining parties,". The motions made by defendants sought to strike the United States and the Commissioner as parties plaintiff and, in the alternative, to dismiss the claims of these plaintiffs for failure to state a claim and for lack of federal jurisdiction. Summary judgment in defendants' favor was also requested.

The district court concluded that "the United States of America and the Commissioner are neither necessary nor proper parties to the action." and that "The real and only parties plaintiff are the three corporations." Since "There is no diversity of citizenship between the parties [the three corporations and the defendants].", the court held that "As the causes of action * * * are simply for debt, there is no federal question jurisdiction." The court, therefore, granted the motions to strike and dismissed the action.

Although plaintiffs' claims are not actually in issue, except incidentally, in determining the jurisdictional question, they may be summarized as charging that some of the defendants caused improperly to be withdrawn from the corporate plaintiffs certain moneys which were paid to other defendants "in violation of express prohibitions of the corporate charter and being a conversion on the part of the mortgage security." The relief demanded is judgment for the funds improperly transferred.

In brief outline, the complaint alleges: The United States and the Commissioner own all the first preferred stock of North Shepherd, 74 and 56. The plaintiff Commissioner is the acting Commissioner of

---

William B. Butler, Asst. U. S. Atty., Woodrow Seals, U. S. Atty., Houston, Tex., for appellants.

Carey Williams, Ben H. Rice, III, Vinson, Elkins, Weems & Searls, Daniel C. Arnold, Houston, Tex., for appellees Wade B. Barnes, David C. Bintliff, David C. Bintliff & Co., Inc., Marjorie Bintliff Johnson, and Beverly Bintliff Arnold.

Before TUTTLE, Chief Judge, and RIVES and MOORE,* Circuit Judges.

LEONARD P. MOORE, Circuit Judge.

Plaintiffs, the United States of America, the Commissioner of the Federal

---

* MOORE, LEONARD P. (Second Circuit), sitting by designation.

the Federal Housing Administration, a governmental agency created by Congress to carry out the provisions of the National Housing Act (the Act) as amended (section 1702 et seq. of Title 12 United States Code). The three plaintiff corporations were organized under the laws of Texas "for the purpose of constructing and operating Federally insured housing projects as provided in the Act." The Act (enacted in 1934) was designed to stimulate the production of adequate housing facilities then much needed by the public. The Federal Housing Administration (FHA) through insurance and mortgages as provided in the Act made it possible for mortgagors to borrow up to 90% of the estimated costs of the rental housing facilities to be constructed. Because of the financial risks thus borne by the FHA, the Commissioner promulgated regulations to protect the FHA against improper diversion of corporate assets (24 C.F.R. 280.1–280.41). Thereunder, as a condition to obtaining FHA mortgage insurance, mortgagors were required to adopt corporate charters prepared by the FHA which, amongst other things, provided that in the event of any default under the mortgage or violation of the provisions of the charter, the Commissioner acquired control through his ownership of the preferred stock.

In 1950 the FHA issued a commitment for Federal insurance to David C. Bintliff & Company, Inc., in the amount of $1,195,300 and North Shepherd was organized, "its sole function being the construction and operations of a Section 608 rental housing project under Title VI of the National Housing Act." Subsequently, in September, 1954, and December, 1954, 56 and 74 were incorporated and executed deed of trust notes for $277,200 and $357,300, respectively. These corporations were created under section 207, Title II of the Act, and the FHA insured the loans. The Commissioner, pursuant to the provisions of the Act, purchased and became the owner of 100 shares of first preferred stock of each of the corporations.

In June 1951 individual defendants authorized the use of assets of North Shepherd to pay David C. Bintliff & Co., Inc., certain amounts for debts owed to it by H. R. LeMay Construction Company. At or about the same time, other amounts were paid out of North Shepherd funds to various defendants. Such payments were not authorized by the Commissioner, were in violation of express prohibitions of the corporate charters, and caused the housing projects to become impaired in value. By reason thereof it became necessary for the Commissioner to take control of the plaintiff corporations under the provisions of their respective charters. Although demand has been made, the defendants have failed to restore the funds improperly diverted.

The district court reasoned that restoration of funds is the only relief sought by any of the five plaintiffs, that each corporation owned its respective cause of action and was able to sue in its own name and in its own behalf. Therefore, concluded the court, the Commissioner and the United States own no cause of action which they may assert. The court relied upon the absence of any statute giving any agency of the United States the right to sue merely because it held stock in a corporation and upon the common law principle that a stockholder normally may not sue on behalf of a corporation unless the corporation is unable or unwilling to do so. In addition, the court pointed out that at common law a guarantor such as the United States, being only under a contingent liability, has no cause of action for a wrong done to the debtor or a mortgagee for damage to the mortgaged property.

These analogies, quite sound as a matter of general law, may not be applicable in passing upon the rights of parties who have participated in business transactions expressly authorized by Congress. The housing projects in which certain of the defendants engaged through the three plaintiff corporations

were made possible by virtue of the National Housing Act. The supervisory powers of the United States and the Commissioner were written into the Act. When the defendants accepted the privileges granted to them, they became subject to the duties and burdens imposed. The building of housing units was of national importance to alleviate a serious housing shortage. To encourage such undertakings was a governmental function. The "first preferred stock" control provision for a trifling governmental investment was an essential and vital part of the legislation. The many restrictions imposed upon corporations created for the purpose of providing housing and the regulatory powers given to the Administrator attest to the fact that the government's role was not that of a mere guarantor (See, e. g., 12 U.S.C.A. § 1709(a–c); 12 U.S.C.A. § 1713(b) (2); 12 U.S.C.A. § 1713(c) (3); 12 U.S.C.A. § 1713 (e); 12 U.S.C.A. § 1745). Furthermore, the North Shepherd charter itself contained (as did the 56 and 74 charters) the very limitations imposed by the Act. When it guaranteed loans of 90% of the property value, the government naturally was entitled to receive strict supervisory powers and to bestow them upon its Commissioner so as to satisfy itself that among other controls there be no improper diversion of corporate funds.

■■ Subsequent to its original enactment in 1934, the National Housing Act has been amended many times. A review of these amendments reveals a Congressional determination to enlarge rather than curtail governmental participation and control in the field of housing. Congress, obviously, did not intend to bestow these specified powers upon the agency created by it and at the same time leave the agency and its Commissioner powerless to carry out their functions. "The United States may lawfully maintain suits in its own courts to prevent interference with the means it adopts to exercise its powers of government and to carry into effect its policies." (United States v. Fitzgerald, 8th Cir., 201 F. 295, 296.) Specific authority was also given to the Commissioner "to sue and be sued in any court of competent jurisdiction, State or Federal" to carry out the provisions of the Act (12 U.S.C.A. § 1702).

In Sarner v. Mason, D.C.N.J.1955, 128 F.Supp. 165, the court had to consider the effect of § 1702, Title 12, U.S.C. Although the case arose upon a motion to remand to the State court, the court had to consider the powers of the Commissioner and his position in the litigation. The court sustained federal jurisdiction, saying: "However, it should now appear that the United States government, through a duly constituted agency, is directly involved in this dispute. * * * The corporate charters are directly within the control of federal law and a federal agency will be adversely affected, assuming these defaults are actual and continuing." Id. 128 F.Supp. at 169. A motion for summary judgment by the Commissioner was subsequently made and granted, 130 F.Supp. 829 and the Third Circuit affirmed, 228 F.2d 176.

Federal jurisdiction was upheld on a motion to dismiss the complaint in Mason v. Kavy, D.C.E.D.N.Y.1955, 134 F.Supp. 451. Judge Galston held that "the Commissioner is authorized to sue in federal district courts to carry out the provisions of the National Housing Act, and the district courts have original jurisdiction of such civil actions which are commenced by the Government, or any agent thereof, expressly authorized to sue, Title 28 U.S.C. § 1345." Id. 134 F.Supp. at 454. In his opinion "the Commissioner is a special kind of stockholder who is given special rights and the prerogative of preserving those rights under the National Housing Act and the regulations which were formulated thereunder, and hence is qualified to institute this federal action." Id. 134 F.Supp. at 454.

The factual situation in Mason **v.** Hirsch, D.C.E.D.N.Y.1956, 140 F.Supp. 453, was quite similar to that here presented. The action was to recover funds belonging to the corporations. There, as here, the right of the Commissioner to bring the action was questioned.

The defendants there urged that he be dropped as a party plaintiff and that the complaint be dismissed. The court rejected the defendants' contention that the action was merely an ordinary stockholders' derivative suit. Because the restoration of moneys illegally taken might cure the mortgage defaults and relieve the FHA of its obligation to pay any deficiency judgment, the court upheld the Commissioner's right to sue.

Additional precedent for support of court jurisdiction over FHA cases in which the Commissioner was a party is found in Loftus v. Mason, D.C.E.D.Va., 139 F.Supp. 207; James River Apartments, Inc. v. Federal Housing Administration, D.C.Md.1955, 136 F.Supp. 24; Clifton Park Manor, Section One v. Mason, D.C.Del., 137 F.Supp. 326; Seven Oaks v. Federal Housing Administration, 171 F.2d 947, 4 Cir., 1948; Darlington v. Federal Housing Administration, E.D. S.C.1955, 134 F.Supp. 337; Id. D.C.1956, 142 F.Supp. 341; Id. 195T, D.C., 154 F. Supp. 411; see also F. H. A. v. Darlington, Inc., 352 U.S. 977, 77 S.Ct. 381, 1 L.Ed.2d 363 (1957) and 358 U.S. 84, 79 S.Ct. 141, 3 L.Ed.2d 132 (1958).

In view of these decisions, the express language of § 1702, the provisions of the Act and the purpose and intent of the Act and the Commissioner's role thereunder, the conclusion is inescapable that under the circumstances alleged in the amended complaint the United States and the Commissioner are proper parties and that the federal courts have jurisdiction to try the issues.

The order appealed from is reversed and the case remanded for trial.