## WILLIAMS ET AL. *v.* GREEN BAY & WESTERN RAILROAD CO.

No. 100. Argued December 10, 1945.—Decided January 7, 1946.

*Mr. Milton Pollack* for petitioners.

*Mr. W. Lloyd Kitchel,* with whom *Messrs. Merrill M. Manning* and *Walter Bruchhausen* were on the brief, for respondent.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Petitioners, residents of the City of New York, are holders of Class B debentures issued by respondent railroad company, a Wisconsin corporation. They brought this suit in the New York courts to recover amounts alleged to be due and payable under the debentures out of earnings in lieu of interest. On petition of respondent the

action was removed to the federal District Court for the Southern District of New York on the grounds of diversity. Respondent thereupon moved (1) to set aside the service because respondent was not doing business in New York and (2) to dismiss because the subject matter was concerned with the internal affairs of a foreign corporation. The District Court denied the first motion, but granted the second.  59 F. Supp. 98.  On appeal the Circuit Court of Appeals affirmed by a divided vote, holding that the District Court did not abuse its discretion in basing its dismissal on *forum non conveniens*.  147 F. 2d 777.  We granted certiorari because of the importance of the question presented.

The Class B debentures, issued in 1896, have no maturity date.  Their principal is payable "only in the event of a sale or reorganization" of the company and "then only out of any net proceeds" remaining after specified payments to the Class A debentures and to the stock.  The covenant in the Class B debentures out of which this litigation arises is set forth below.[1]  The Circuit Court of

---

[1] "The said Railroad Company Hereby Agrees that until such payment, the holders of this Series of Debentures shall in lieu of interest thereon participate in the distribution of annual net income to the following extent, viz.:—So much of the annual net earnings of the said Company in any year as would be applicable to the payment of dividends on stock shall be applied as follows, viz.:—To the holders of Class A Debentures 2½ per cent upon the face value thereof, or if such annual net earnings are insufficient for the payment of the same, then all such net earnings shall be distributed pro rata among the holders of said Class A Debentures.  After the payment of 2½ per cent upon the face value of Class A Debentures, the stockholders of the Company are entitled to receive the balance of such net earnings until 2½ per cent shall have been paid out of the same upon the par value of the said stock, and all surplus net earnings then remaining shall be paid to the holders of Class A Debentures and of the stock pro rata until five per cent shall have been paid upon the face value of said Debentures and upon the par of said stock for such year, and any surplus net earnings arising in such year which may then remain shall be paid to and distributed among the holders of Class B

Appeals was divided as to its meaning. The majority concluded that even though there were net earnings after the payments to the Class A debentures and to the stock, the directors had discretion to determine whether or not that sum should be paid to the Class B debentures. The court thereupon held, in reliance on *Rogers* v. *Guaranty Trust Co.*, 288 U. S. 123; *Cohn* v. *Mishkoff Costello Co.*, 256 N. Y. 102, 175 N. E. 529; *Cohen* v. *American Window Glass Co.*, 126 F. 2d 111, that the suit concerned the internal affairs of respondent and could better be tried in Wisconsin, the State of its incorporation. The minority thought that the amount of net earnings remaining after deducting the payments made to the Class A debentures and to the stock was to be paid to the Class B debentures, that the directors had no discretion to withhold such amounts, and that their payment involved nothing more than a ministerial act.[2] In that view the suit was substantially the same as one for a liquidated sum and would entail no interference with the internal affairs of a foreign corporation.

We leave open the question of the proper construction of the "net earnings" covenant in the Class B debentures. Although we assume that the majority of the court below

Debentures pro rata. None of such payments shall be cumulative. The amounts, if any, payable upon this series of debentures out of the net earnings in any year, will be fixed and declared by the Board of Directors on or before the first day of February, in the following year . . ."

[2] Petitioners alleged that, with the exception of three years, respondent had substantial net earnings in each year from 1924 to 1943 inclusive, in excess of the amounts required to be paid and actually paid on the Class A debentures and on the stock. The aggregate amount of such net earnings, after deducting reserves for additions and general improvements and depreciation, and after deducting the payments on the Class A debentures and the stock was alleged to be approximately $1,650,000. The amounts actually paid on the Class B debentures during those years was $840,000, leaving due, according to petitioners, about $810,000.

was right in its interpretation of the covenant, we think it was improper to dismiss the case on the grounds of *forum non conveniens.*

*Rogers* v. *Guaranty Trust Co., supra,* is the only decision of this Court holding that a federal court should decline to hear a case because it concerns the internal affairs of a corporation foreign to the State where the federal court sits. A corporation chartered by one State commonly does business in the farthest reaches of the nation. Its business engagements—the issuance of securities, mortgaging of assets, contractual undertakings—frequently raise questions concerning the construction of its charter, by-laws and the like, or the scope of authority of its officers or directors, or the responsibility of one group in the corporate family to another group. All such questions involve in a sense the internal affairs of a corporation—whether in a suit on a contract the corporation interposes the defense of *ultra vires,* or a bondholder sues on his bond or a stockholder asserts rights under his stock certificate. But a federal court which undertakes to decide such a question does not trespass on a forbidden domain. See *Williamson* v. *Missouri-Kansas Pipe Line Co.,* 56 F. 2d 503, 510. Under the rule of *Erie R. Co.* v. *Tompkins,* 304 U. S. 64, a federal court in a diversity case applies local law. In conflict of laws cases that may mean ascertaining and applying the law of a State other than that in which the federal court is located. *Klaxon Co.* v. *Stentor Electric Mfg. Co.,* 313 U. S. 487. The fact that the corporation law of another State is involved does not set the case apart for special treatment. The problem of ascertaining the state law may often be difficult. But that is not a sufficient ground for a federal court to decline to exercise its jurisdiction to decide a case properly before it. As we said in *Meredith* v. *Winter Haven,* 320 U. S. 228, 234, "The diversity jurisdiction was not conferred for the benefit of the federal courts or to serve their convenience. Its purpose

was generally to afford to suitors an opportunity in such cases, at their option, to assert their rights in the federal rather than in the state courts." So long as diversity jurisdiction remains, the parties may not be remitted to a state court merely because of the difficulty of making a decision in the federal court. *Meredith* v. *Winter Haven, supra.* If the District Court were sustained in declining to exercise its jurisdiction in this case, there could be no assurance that the litigation would be transferred to the Wisconsin state courts. If petitioners sued in the federal court in Wisconsin, as they could by reason of diversity of citizenship, no reason is apparent why that court should not proceed to decision. The fact that the federal court in Wisconsin could pass on this internal affair of this corporation does not, of course, mean that the federal court in New York need do so. The nature of the problem presented and the relief sought might be of controlling significance in inducing the federal court in New York to remit the parties to Wisconsin. But as we shall see, no special circumstances of that nature are present here.

We mention this phase of the matter to put the rule of *forum non conveniens* in proper perspective. It was designed as an "instrument of justice."[3] Maintenance of a suit away from the domicile of the defendant—whether he be a corporation or an individual—might be vexatious or oppressive.[4] An adventitious circumstance might land

---

[3] Mr. Justice Cardozo dissenting, *Rogers* v. *Guaranty Trust Co., supra*, p. 151.

[4] In Gibb, International Law of Jurisdiction (1926), pp. 212–213, the law of England and Scotland is stated as follows: "the court will not hold its hand unless there be, in the circumstances of the case, such hardship on the party setting up the plea as would amount to vexatiousness or oppression if the court persisted in exercising jurisdiction. The inconvenience, then, must amount to actual hardship, and this must be regarded as a condition *sine qua non* of success in putting forward a defence of *forum non conveniens*. For the general rule is that a court possessing jurisdiction must exercise it unless the reasons to the contrary are clear and cogent."

a case in one court when in fairness it should be tried in another. The relief sought against a foreign corporation

In *Societe du Gaz de Paris* v. *"Les Armateurs francais"*, 1926 S. C. (H. L.) 13, perhaps the leading English case on the subject, a French manufacturing company sued a firm of French shipowners in a Scottish court on a charter-party. It provided that the vessel was to load a cargo of coal in England and proceed to a French port. The vessel, after loading, sailed and foundered. The plaintiff attached another vessel of defendants found in a Scottish port and claimed damages by reason of the unseaworthiness of the vessel. Neither plaintiff nor defendant had a place of business in Scotland. The bulk of the evidence necessary to determine the controversy was French, no machinery existed for compelling the attendance of French witnesses in a Scottish court, no question of Scots law was involved, and a trial in Scotland would deprive defendants of a defense open under French law. A judgment sustaining the plea of *forum non conveniens* was sustained. Lord Chancellor Cave summarized the rule as follows : ". . . if in any case it appeared to the Court, after giving consideration to the interests of both parties and to the requirements of justice, that the case could not be suitably tried in the Court in which it was instituted, and full justice could not be done there to the parties, but could be done in another Court, then the former Court might give effect to the plea by declining jurisdiction and permitting the issues to be fought out in the more appropriate Court." pp. 16–17. Lord Shaw of Dunfermline stated: "If in the whole circumstances of the case it be discovered that there is a real unfairness to one of the suitors in permitting the choice of a *forum* which is not the natural or proper *forum*, either on the ground of convenience of trial or the residence or domicile of parties, or of its being either the *locus contractus*, or the *locus solutionis*, then the doctrine of *forum non conveniens* is properly applied." p. 20.

And see *Canada Malting Co.* v. *Paterson Steamships*, 285 U. S. 413, 423, where Mr. Justice Brandeis speaking for the Court said, "Courts of equity and of law also occasionally decline, in the interest of justice, to exercise jurisdiction, where the suit is between aliens or non-residents or where for kindred reasons the litigation can more appropriately be conducted in a foreign tribunal." For reviews of the cases see Blair, The Doctrine of Forum Non Conveniens in Anglo-American Law, 29 Col. L. Rev. 1; Foster, Place of Trial in Civil Actions, 43 Harv. L. Rev. 1217, 44 Harv. L. Rev. 41; Dainow, The Inappropriate Forum, 29 Ill. L. Rev. 867.

may be so extensive or call for such detailed and continuing supervision that the matter could be more efficiently handled nearer home.[5]  The limited territorial jurisdiction of the federal court [6] might indeed make it difficult for it to make its decree effective.[7]  But where in this type of litigation only a money judgment is sought, the case normally is different.  The fact that the claim involves complicated affairs of a foreign corporation is not alone a sufficient reason for a federal court to decline to

[5] See *Wallace* v. *Motor Products Corp.*, 25 F. 2d 655, where a suit was brought in the federal court in Michigan to annul the reorganization of a New York corporation and to restore the stockholders of the old corporation to the position they had occupied prior to the reincorporation; *Eberhard* v. *Northwestern Life Ins. Co.*, 210 F. 520, where policy holders of a Wisconsin life insurance company sued in the federal court in Ohio for an accounting of dividends received and paid and for an injunction against the election of trustees, and praying that the trustees who had committed allegedly wrongful acts be decreed not to be officers of the company and that a receiver of the company be appointed; *Boyer* v. *Travelers' Protective Assn.*, 75 F. 2d 440, where suit was brought in the federal court in Pennsylvania to enjoin a Missouri corporation from enforcing certain amendments to its constitution; *Cohen* v. *American Window Glass Co.*, 126 F. 2d 111, where stockholders of a Pennsylvania corporation sued in the federal court in New York to enjoin a proposed merger, to have declared illegal the payment of dividends, and to have a receiver, resident in Pennsylvania, appointed.

[6] *Georgia* v. *Pennsylvania R. Co.*, 324 U. S. 439, 467–468, and cases cited.

[7] The same is true, of course, of state courts.  See *Taylor* v. *Mutual Reserve Fund Life Assn.*, 97 Va. 60, 33 S. E. 385; *Howell* v. *Chicago & N. W. R. Co.*, 51 Barb. 378, 383.  Cf. also the cases where the court in which suit is brought cannot give the relief necessary to produce an equitable result (*Marshall* v. *Sherman*, 148 N. Y. 9, 42 N. E. 419; *State* v. *Denton*, 229 Mo. 187, 129 S. W. 709) or where the right of recovery is incapable of enforcement because it is so dissimilar to any which the court, whose jurisdiction is invoked, recognizes.  *Slater* v. *Mexican National R. Co.*, 194 U. S. 120.

decide it.[8] The same may be true even where an injunction is sought.[9] We give these merely as illustrations. Each case turns on its facts. There are no special circumstances here, however, which should lead the District Court in New York to decline to exercise the jurisdiction which it has.

If petitioners' theory of the case is right, the court need go no further than it would in enforcing any contract to pay money. If, as the majority of the court below thought, the payment of net income to the Class B debentures rested in the discretion of the directors, the question under the applicable local law would normally be whether their discretion had been abused.[10] In case it were found to

[8] *American Seating Co.* v. *Bullard,* 290 F. 896, 901, where stockholders of a New Jersey corporation, who did not consent to the sale of its assets pursuant to a plan of reorganization and refinancing, sued in the federal court in Michigan to recover the value of their stock; *United Milk Products Corp.* v. *Lovell,* 75 F. 2d 923 (semble); *National Lock Co.* v. *Hogland,* 101 F. 2d 576 (semble); *Overfield* v. *Pennroad Corp.,* 113 F. 2d 6, where stockholders brought a derivative action in the federal court in Pennsylvania to recover for wrongs done their company, a Delaware corporation, by a Pennsylvania company; *Williamson* v. *Missouri-Kansas Pipe Line Co., supra,* (semble). Cf. *Kelley* v. *American Sugar Refining Co.,* 139 F. 2d 76.

[9] *Harr* v. *Pioneer Mechanical Corp.,* 65 F. 2d 332, where stockholders of a Delaware corporation sued in the federal court in New York to enjoin the sale of stock on the representation that it had priority over the shares held by plaintiffs; *American Creosote Works* v. *Powell,* 298 F. 417, where stockholders of a Maryland corporation sued in the federal court in Louisiana to annul and cancel the issuance of certain stock.

[10] That is the usual rule in suits to compel the declaration of dividends. *Dodge* v. *Ford Motor Co.,* 204 Mich. 459, 170 N. W. 668; *Morey* v. *Fish Bros. Wagon Co.,* 108 Wis. 520, 529, 84 N. W. 862; *Hiscock* v. *Lacy,* 9 Misc. 578, 30 N. Y. S. 860; *Kassel* v. *Empire Tinware Co.,* 178 App. Div. 176, 164 N. Y. S. 1033.

See Spellman, Corporate Directors (1931) § 141; Weiner, Theory of Anglo-American Dividend Law, 29 Col. L. Rev. 461; Ballantine & Hills, Corporate Capital and Restrictions Upon Dividends Under Modern Corporation Laws, 23 Calif. L. Rev. 229.

have been abused, the customary remedy is comparable to that which a court of equity affords in a suit for specific performance.[11] The point is that, however this suit be viewed, the relief sought is not of such a character as to suggest that the federal court in New York would be so handicapped that it should remit the parties to Wisconsin. There is a suggestion that the parties should be remitted to Wisconsin because a construction of the covenant will primarily affect the interests of the public in that State where all of respondent's railroad lines are located. Reference is made to *New York, L. E. & W. R. Co.* v. *Nickals,* 119 U. S. 296, where preferred stockholders sued for dividends which they claimed had been earned on their stock and wrongfully withheld. The Court construed the particular contract as vesting discretion in the directors. In holding that their discretion in withholding a distribution of net earnings had not been abused, it emphasized "the duty of the company to maintain its track and cars in such condition as to accommodate the public and provide for the safe transportation of passengers and freight." p. 306. But such considerations will frequently be involved in applying the rule of *Erie R. Co.* v. *Tompkins, supra.* They go no further than to suggest one additional phase of local law which the federal court, whether it sits in New York or in Wisconsin, may have to apply. They fall far short of those instances, reviewed in *Meredith* v. *Winter Haven, supra,* p. 235, where the federal court declines to act because its action might interfere with state proceedings, or state functions, or the functioning of state administrative agencies.

It was held in *Weiss* v. *Routh,* 149 F. 2d 193, that a federal court in a diversity case was required by *Erie R.*

---

[11] For the decree entered in *Dodge* v. *Ford Motor Co., supra* note 9, see *Kales* v. *Woodworth,* 20 F. 2d 395, 396. And see *Boardman* v. *Lake Shore & M. S. R. Co.,* 84 N. Y. 157, 180; *Kassel* v. *Empire Tinware Co., supra* note 10, p. 180.

*Co.* v. *Tompkins, supra,* to apply the local rule of *forum non conveniens.* We reserve decision on that question. For even if we assume the New York rule to be applicable here, we would reach no different result. *Cohn* v. *Mishkoff Costello Co., supra,* on which the court below relied, was a suit against a foreign corporation for the redemption of its shares of stock or in the alternative for a declaration of a dividend. But that involved a degree of visitation not present here where petitioners seek only a money judgment on their debentures. Nor do petitioners challenge an act of the corporation which "offended solely against the majesty of the State to which it owed its life." *Ernst* v. *Rutherford Gas Co.,* 38 App. Div. 388, 392, 56 N. Y. S. 403. The Court of Appeals in the *Cohn* case stated that "contracts between a foreign corporation and its members will usually be enforced in the courts of this State." 256 N. Y. p. 105. Cardozo, J., stated the New York rule in *Travis* v. *Knox Terpezone Co.,* 215 N. Y. 259, 264, 109 N. E. 250, as follows: "To trace in advance the precise line of demarcation between the controversies affecting a foreign corporation in which jurisdiction will be assumed and those in which jurisdiction will be declined, would be a difficult and hazardous venture. A litigant is not, however, to be excluded because he is a stockholder, unless considerations of convenience or of efficiency or of justice point to the courts of the domicile of the corporation as the appropriate tribunals." And see the New York authorities reviewed in *Weiss* v. *Routh, supra.* In the *Travis* case the court entertained a suit by a stockholder of a foreign corporation to compel the transfer of shares or to recover their value. We perceive in the present case no greater interference in the internal affairs of this foreign corporation.

Nor can we conclude that the maintenance of this suit in New York will be vexatious or oppressive. Petitioners, as we have said, reside there. While respondent's rail-

road lines are wholly in Wisconsin, it does business in New York. The Class B debentures are listed and traded in on the New York Stock Exchange. The amounts payable on them in lieu of interest are payable in New York. Respondent maintains its financial as well as a traffic office in New York. It maintains a bank account in New York, not only to take care of obligations under its securities, but also to handle excess operating funds not needed in Wisconsin. Five of respondent's six directors are to be found in New York. These five directors include all the executive and fiscal officers, except the president who supervises operations in Wisconsin and the general auditor who is in Wisconsin. Directors' meetings are customarily held in New York. Two of the three members of the executive committee, which acts for the board between meetings, are to be found in New York. Financial records, transfer books, minute books and the like are kept in New York. These facts plainly indicate to us that it would not be vexatious or oppressive to entertain this suit in New York, whether the availability of witnesses or any other aspect of a trial be considered. We accordingly conclude that, the requirements of jurisdiction and venue being satisfied (Judicial Code, §§ 24, 51, 28 U. S. C. §§ 41 (1), 112), the District Court should not have declined to hear and decide the case.

*Reversed.*

Mr. Justice Jackson took no part in the consideration or decision of this case.