**Sally RUDETSKY, as Administratrix of the Estate of Michael Rudetsky and for herself, individually, Plaintiff,**

v.

**George O'DOWD, a/k/a "Boy George," Defendant.**

**No. 86–CV–3870 (JBW).**

United States District Court,
E.D. New York.

May 15, 1987.

Harry H. Lipsig, New York City, by Harry H. Lipsig, Jay W. Dankner, Alan A. Beaven, for plaintiff.

Orans, Elsen & Lupert, New York City, by Sheldon H. Elsen, Clement J. Colucci, John B. Orenstein, for defendant.

## MEMORANDUM and ORDER

WEINSTEIN, Chief Judge:

Defendant George O'Dowd moves to dismiss on grounds of forum non conveniens this action by the administratrix of the estate of Michael Rudetsky. For the reasons stated below, the motion is denied.

Michael Rudetsky was a 27–year-old songwriter. George O'Dowd, sometimes known as Boy George, is a singer. On August 3, 1986, Rudetsky contracted with O'Dowd and his agents in New York to work in London. O'Dowd was to provide Rudetsky with accommodations.

Two days later, while working with O'Dowd in Brixton, England, Rudetsky ingested heroin. When it appeared that Rudetsky was not well, O'Dowd put him to bed. The next morning, Rudetsky died of morphine intoxication. The British coroner has concluded that the death was probably caused by "misadventure," rather than by any criminal activity.

The decedent's mother sued O'Dowd in the New York State Supreme Court. The action was removed to this court. 28 U.S.C. § 1441. The gist of the substantive dispute is whether the defendant breached a duty to the decedent by failing to provide proper medical care when he knew or should have known that Rudetsky was in danger.

A preliminary question is whether, under *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), state or federal law of forum non conveniens applies in a diversity case. The Supreme Court has, on three occasions, explicitly left

this issue unresolved. *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 249 n. 13, 102 S.Ct. 252, 262 n. 13, 70 L.Ed.2d 419 (1981); *Gulf Oil Co. v. Gilbert,* 330 U.S. 501, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947) (New York law same as federal law); *Williams v. Green Bay & W.R. Co.,* 326 U.S. 549, 559, 66 S.Ct. 284, 289, 90 L.Ed. 311 (1946) (same). The Second Circuit has recently reiterated that the similarity between New York law and federal law on forum non conveniens doctrine obviates the need to resolve the *Erie* question. *Schertenleib v. Traum,* 589 F.2d 1156, 1162 n. 13 (2d Cir. 1978). *See also Olympic Corp. v. Societe Generale,* 462 F.2d 376, 378 (2d Cir.1972). *But cf. Islamic Republic of Iran v. Pahlavi,* 62 N.Y.2d 474, 484, 478 N.Y.S.2d 597, 602, 467 N.E.2d 245, 250 (1984) (diverging from federal doctrine on whether alternative forum must be available to consider forum non conveniens claims), *cert. denied,* 469 U.S. 1108, 105 S.Ct. 783, 83 L.Ed.2d 778 (1985). For simplicity, federal law will be applied.

The "ultimate inquiry" in a forum non conveniens analysis is where the place of trial will "best serve the convenience of the parties and the ends of justice." *Koster v. Lumbermens Mut. Casualty Co.,* 330 U.S. 518, 527, 67 S.Ct. 828, 833, 91 L.Ed. 1067 (1947). Because the factors relevant to that inquiry are heavily oriented to the individual case, *"forum non conveniens* determination is committed to the sound discretion of the trial court." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419. *See also Gilbert,* 330 U.S. at 508, 67 S.Ct. at 843; *In re: Union Carbide Corp. Gas Plant Disaster at Bhopal, India in December, 1984,* 809 F.2d 195, 202 (2d Cir.1987); *Alcoa Steamship Co., Inc. v. M/V Nordic Regent,* 654 F.2d 147, 158 (2d Cir.1981) (en banc).

In making its determination, the trial court must consider the following five factors of "private interest":

[1] the relative ease of access to sources of proof; [2] availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; [3] possibility of view of premises, if view would be appropriate to the action; and [4] all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be [5] questions as to the enforcibility of a judgment if one is obtained.

*Gulf Oil Co. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 539, 843, 91 L.Ed. 1055 (1947). At least five additional factors of "public interest" also play a role in the balancing:

[1] Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. [2] Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. [3] In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. [4] There is a local interest in having localized controversies decided at home. [5] There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Id.,* 330 U.S. at 508–09, 67 S.Ct. at 843.

Multivariate analysis of these many relevant, but often opposing, vectors is complex. Yet, if "central emphasis were placed on any one factor," the doctrine "would lose much of the very flexibility that makes it so valuable." *Piper Aircraft,* 454 U.S. at 249–250, 102 S.Ct. at 263. Since the doctrine was designed as an "instrument of justice," *Rogers v. Guaranty Trust Co.,* 288 U.S. 123, 151, 53 S.Ct. 295, 305, 77 L.Ed. 652 (1933) (Cardozo, J., dissenting), it follows that each case "turns on its facts." *Williams v. Green Bay & W.R. Co.,* 326 U.S. 549, 557, 66 S.Ct. 284, 288, 90 L.Ed. 311 (1946). Eschewed are any "rigid rule[s] to govern discretion." *Piper Aircraft,* 454 U.S. at 249, 102 S.Ct. at 262. Emphasized is the mercy dispensing power of the trial judge in the individual case,

rather than any unyielding rules of justice that would apply indiscriminately in all cases.

Analysis must, nevertheless, start with the proposition that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gilbert*, 330 U.S. at 508, 67 S.Ct. at 843. Where the plaintiff's choice of forum is the judicial system of her own country, it can be assumed that such a choice was made "because it is convenient," and not "solely in order to harass the defendant or take advantage of favorable law." *Piper Aircraft*, 454 U.S. at 249 n. 15, 102 S.Ct. at 262 n. 15. Because a "central purpose" of the forum non conveniens inquiry is "to ensure that the trial is convenient," 454 U.S. at 256, 102 S.Ct. at 266, the plaintiff's choice of forum is entitled to even greater deference than usual when the plaintiff has chosen her home forum. 454 U.S. at 255, 102 S.Ct. at 266. "In any balancing of conveniences, a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience [of] the defendant...." *Koster v. Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 524, 67 S.Ct. 828, 832, 91 L.Ed. 1067 (1947). *See also Swift & Co. Packers v. Compania Columbiana del Caribe*, 339 U.S. 684, 697, 70 S.Ct. 861, 869, 94 L.Ed. 1206 (1950) ("suit by a United States citizen against a foreign respondent brings into force considerations very different from those in suits between foreigners").

A plaintiff should not be deprived of her home jurisdiction "except upon a clear showing of facts which either (1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems." *Koster v. Lumbermens Mut. Casualty Co.*, 330 U.S. at 524, 67 S.Ct. at 831-32. *Accord, Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1344 (2d Cir.1972); *Olympic Corp. v. Societe Generale*, 462 F.2d 376, 378 (2d Cir.

1972); *Founding Church of Scientology v. Verlag*, 536 F.2d 429, 435 (D.C.Cir.1976) ("great significance" that both parties are United States residents); *Hoffman v. Goberman*, 420 F.2d 423, 428 (3d Cir.1970) (election of home forum should not be disregarded absent "manifest injustice" to defendant); *Burt v. Isthmus Development Co.*, 218 F.2d 353, 357 (5th Cir.1955) (requiring "extreme circumstances" and "material injustice" before denying a citizen access to courts of this country), *cert. denied*, 349 U.S. 922, 75 S.Ct. 661, 99 L.Ed. 1254 (1955).

Like any of the many relevant considerations, the home forum of the plaintiff is not itself dispositive of the forum non conveniens inquiry. *Piper Aircraft*, 454 U.S. at 255 n. 23, 102 S.Ct. at 266 n. 23. *See also Alcoa S.S. Co., Inc. v. M/V Nordic Regent*, 654 F.2d 147, 152 (2d Cir.1981) (citizenship "*not* an impenetrable shield against dismissal"); *id.* at 154 (no "talismanic significance" accorded citizenship); *Lehman v. Humphrey Cayman, Ltd.*, 713 F.2d 339, 346 (8th Cir.1983), *cert. denied*, 464 U.S. 1042, 104 S.Ct. 708, 79 L.Ed.2d 172 (1984); *Macedo v. Boeing Co.*, 693 F.2d 683, 688 (citizens deserve "somewhat more deference," but dismissal not automatically barred); *Murty v. Aga Khan*, 92 F.R.D. 478, 480 (E.D.N.Y.1981) (sending case involving a New York resident plaintiff to France, the defendant's domicile). As Chief Judge Fuld noted in *Silver v. Great Amer. Ins. Co.*, 29 N.Y.2d 356, 362, 328 N.Y.S.2d 398, 403, 278 N.E.2d 619, 622 (1972), relaxing the previous New York rule that had made citizenship dispositive in transitory causes of action:

It has become increasingly apparent that a greater flexibility in applying the doctrine is not only wise but, perhaps, necessary. (See, e.g., Rosenberg, One Procedural Genie Too Many or Putting *Seider* Back Into Its Bottle, 71 Col.L. Rev. 660, 672); 1 Weinstein-Korn-Miller, N.Y.Civ.Prac., ¶ 301.07; Smit, Report on Uniform Interstate and International Procedure Act, Thirteenth Annual Report of N.Y. Judicial Conference, 1968, p. 138. The fact that litigants may more

easily gain access to our courts—with the consequent increase in litigation— stemming from enactment of the long-arm statute (CPLR 302), changing choice of law rules see, e.g., *Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 and decisions such as *Seider v. Roth*, 17 N.Y.2d 111, 269 N.Y. S.2d 99, 216 N.E.2d 312, requires a greater degree of forbearance in accepting suits which have but minimal contact with New York. (See 1 Weinstein-Korn-Miller, N.Y.Civ.Prac., ¶ 301.07.) With that in mind, it was suggested in *Simpson v. Loehmann*, 21 N.Y.2d 305, 312, 287 N.Y.S.2d 633, 638, 234 N.E.2d 669, 672; mot. for rearg. den. 21 N.Y.2d 990, 290 N.Y.S.2d 914, 238 N.E.2d 319 that further study be given to the subject of *forum non conveniens*. And, a short time later, the State's Judicial Conference recommended a bill reciting, in part, that "[t]he domicile or residence in this state of any party to the action shall not preclude the court from staying or dismissing the action."

(Footnotes omitted.)

Conveniences predicated upon citizenship may be outweighed by other factors—particularly, oppresiveness and vexation to the defendant "out of all proportion" to the plaintiff's convenience; the lack of inconvenience to the plaintiff in transferring to the foreign forum; and inconvenience caused by the court's own administrative and legal problems. *Koster*, 330 U.S. at 524, 67 S.Ct. at 831–32. In effect, this rule—of deference without slavishness towards citizenship or residence—reiterates the *Gilbert* public-private factor calculus, *see Alcoa*, 654 F.2d at 151–52, but provides a bit more specificity regarding the significance to be accorded an American plaintiff's citizenship in calculating the conveniences.

Even though it has been recognized that citizenship is not dispositive in the forum non conveniens balancing, courts have continued to treat the residence of the suitor as "a fact of high significance." *Koster*, 330 U.S. at 525, 67 S.Ct. at 832 (citation omitted). *See also Piper Aircraft*, 454 U.S. at 255–56, 102 S.Ct. at 266 ("When the

home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable."); *Manu Int'l, S.A. v. Avon Products, Inc.*, 641 F.2d 62, 67 (2d Cir.1956) (courts reluctant to impose forum non conveniens where dismissal forces American citizen to seek redress in foreign court); *Ledingham v. Parke-Davis Div. of Warner-Lambert Co.*, 628 F.Supp. 1447, 1449 (E.D.N.Y.1986); *Agyenkwa v. American Motors Corp.*, 622 F.Supp. 242, 244 (E.D.N. Y.1986). *Cf. Silver v. Great American Ins. Co.*, 29 N.Y.2d 356, 361, 328 N.Y.S.2d 398, 402, 278 N.E.2d 619, 621 (1972) (though former inflexible rule had been relaxed, residence "still an important factor to be considered"); *Sullivan v. J.V. McNicholas Transfer Co.*, 462 N.Y.S.2d 934, 937, 93 A.D.2d 527, (4th Dept.1983) (*Silver* only modified categorical rule; "By no means ... has New York abandoned residence as an important factor"; "residence of the plaintiff should generally be the *most* significant factor in the equation") (citation omitted) (emphasis added). For example, several courts in this circuit have, because of the burden caused by distance, refused to send American residents overseas on forum non conveniens grounds. *See, e.g., Ciprari v. Servicos Aereos Cruzeiro do Sul, S.A.*, 232 F.Supp. 433, 443 (S.D.N.Y. 1964), *aff'd*, 359 F.2d 855 (1966); *Wahl v. Pan American World Airways*, 227 F.Supp. 839, 841 (S.D.N.Y.1964); *Shulman v. Compagnie Generale Transatlantique*, 152 F.Supp. 833, 836 (S.D.N.Y.1957).

In this case, Mrs. Rudetsky's citizenship and residence in the United States establish a strong case against transfer of the action to England. She herself has never had any direct contacts with England, and filing an action there would undoubtedly be much less convenient for her than continuing with the case in this court. Were the case to be tried in England, Mrs. Rudetsky would have to obtain new and unfamiliar British counsel, and would be seriously inconvenienced by having to travel a great distance from her home to an unfamiliar

nation for the duration of what might well be an extended trial.

This is not a case where residence does not in fact correlate with the plaintiff's convenience, as is often true with corporate plaintiffs. Mrs. Rudetsky is not "a mere phantom plaintiff with interest enough to enable [her] to institute the action and little more." *Koster*, 330 U.S. at 525, 67 S.Ct. at 832. The threat of forum-shopping is substantially diminished where, as here, the plaintiff chooses to shop in her own neighborhood. Mrs. Rudetsky's American residence is not being used as a "facile proxy" for her convenience. *See* Note, *Forum Non Conveniens and American Plaintiffs in the Federal Courts*, 47 U.Chi.L.Rev. 373, 383 (1980) (authored by M. Wolinsky). There is no more natural or convenient place for her to have instituted this action.

The plaintiff here further contends that, as a practical matter, the ostensibly more convenient British forum is in reality not a forum at all, because she cannot afford to prosecute her claim there. *See Manu Int'l, S.A. v. Avon Products, Inc.*, 641 F.2d 62, 67 (2d Cir.1981). Absence of a contingent fee system for attorneys' fees in England makes it impossible, the plaintiff argues, for her to continue this action there. *Cf. id.* ("almost a perversion" of doctrine to remit plaintiff, in name of expediency, to forum in which he will not be able to sue); *Irish Nat'l Ins. Co., Ltd. v. Aer Lingus Teoranta*, 739 F.2d 90, 91 (2d Cir.1984) (discussion of relative conveniences "Kafkaesque" and "somewhat of a legal charade" where a trial in alternate forum would never occur); *Odita v. Elder Dempster Lines, Ltd.*, 286 F.Supp. 547, 551 (S.D. N.Y.1968).

In a federal forum non conveniens inquiry, the court must, as an initial matter, determine whether there exists an alternative forum. *Piper Aircraft*, 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22. *But cf. Islamic Republic of Iran v. Pahlavi*, 62 N.Y.2d 474, 484, 478 N.Y.S.2d 597, 602, 467 N.E.2d 245, 250 (1984) (absence of alternative forum not decisive in New York). The Supreme Court has enumerated three circumstances under which it may be said that there is no alternative forum: where the defendant is not "amenable to process" in the other forum; where the proposed alternative forum does not permit litigation of the subject matter of the dispute; and, in "rare circumstances," where the remedy offered by the other forum is "clearly unsatisfactory." *Piper Aircraft*, 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22. The lack of a contingency fee system—and the possible additional burden of liability for the legal fees of the defendant—does not constitute one of those circumstances. Although litigation in England may be more difficult or more expensive for the plaintiff, there is little doubt that the plaintiff would be treated fairly there and would be entitled to a not insubstantial remedy, including the right to recoup legal fees from the losing defendant. *See Ledingham v. Parke-Davis Div. of Warner-Lambert Co.*, 628 F.Supp. 1447, 1450 (E.D.N.Y.1986); *In re Disaster at Riyadh Airport, Saudi Arabia, on August 19, 1980*, 540 F.Supp. 1141, 1145–46 (D.D.C.1982).

Absence of a contingent fee system is an appropriate "disincentive to proceeding in the alternative forum," *id.* at 1145, which England has reasonably preserved. It is not *per se* prohibitive. If the plaintiff were forced to bring suit in England, she would be disadvantaged by the contingent fee system, but only to the same extent as are all British litigants in the same position. If such a system were to be automatically interposed as a dispositive bar to dismissal, the forum non conveniens doctrine in effect would be eviscerated as to all non-wealthy plaintiffs, because the contingency fee is an institution peculiar to this country. *See Piper Aircraft*, 454 U.S. at 252 n. 18, 102 S.Ct. at 264 n. 18.

While it is not determinative, a pecuniary barrier to the plaintiff should nevertheless be taken into account in balancing the private convenience factors in the *Gilbert* equation. Consideration must be given to procedural differences which do in fact correlate to material inconveniences.

Though substantive differences "ordinarily should not be given conclusive or even substantial weight," *Piper Aircraft*,

454 U.S. at 247, 102 S.Ct. at 261, the difference in fee systems is not an issue "concerned wholly with a less favorable substantive law." *Lehman v. Humphrey Cayman, Ltd.*, 713 F.2d 339, 346 (8th Cir. 1983), *cert. denied*, 464 U.S. 1042, 104 S.Ct. 708, 79 L.Ed.2d 172 (1984).

The court "must be alert to the realities of the plaintiff's position, financial and otherwise, and his or her ability as a practical matter to bring suit in the alternative forum." *Id.* The inability of a plaintiff to retain counsel in the alternative forum is therefore a significant factor counseling against dismissal. *Accord, id.* (lack of contingent fees one of factors in reversing dismissal); *Manu Int'l, S.A. v. Avon Products, Inc.*, 641 F.2d 62, 67 (2d Cir. 1981) (same); *Hodson v. A.H. Robins Co., Inc.*, 528 F.Supp. 809, 818 (E.D.Va.1981) (transfer to England denied; absence of contingent fee system a factor "which favors this Court's retention of jurisdiction"), *aff'd*, 715 F.2d 142 (1983); *Fiorenza v. United States Steel Int'l, Ltd.*, 311 F.Supp. 117, 120 (S.D.N.Y.1969) (jurisdiction retained where impecunious foreign plaintiff would be denied benefit of contingent fee system in Bahamas). *See also Agyenkwa v. American Motors Corp.*, 622 F.Supp. 242, 245 (E.D.N.Y.1986) (absence of contingency system a factor which favors retention of jurisdiction); *but cf. Macedo v. Boeing Co.*, 693 F.2d 683, 688 (7th Cir.1982) (procedural differences, like substantive differences, should be given some weight, but "should ordinarily not be conclusive or even substantial").

At an evidentiary hearing, the parties stipulated that plaintiff's assets are too great to meet the means test for free legal aid representation in England. Defendant estimates the budget for the plaintiff's case at approximately $35,000. Plaintiff's estimates of fees is upwards of $100,000, because of the perceived need to retain a more eminent solicitor and a Queens' counsel. The higher figure seems closer to the mark. But even if we accept defendant's judgment as the more reasonable one, we must conclude that such an expense is highly burdensome to a woman of Mrs. Rudetsky's limited means. It is likely that this "inconvenience" would preclude her from filing an action in England. For the present, the decedent's mother will be shouldering all the costs of this action.

Several other potential procedural inconviences that might weigh in favor of retaining jurisdiction have been obviated by a number of stipulations entered into by the parties. Defendant has somewhat alleviated plaintiff's potential financial burden by consenting to waive his right to secure bond and legal costs in England. He has also consented to personal jurisdiction in England, so far as that may be necessary to commence action there. Finally, he has agreed to support plaintiff's application to sever the liability and damages stages of trial in England, though it is unclear whether the British courts whould be hospitable to such a motion.

There are no overriding inconveniences to the defendant in trying the case in the United States. He can easily afford the added expense that travel to this country necessitates.

Other "private interest" factors articulated by the *Gilbert* Court include the ease of access to sources of proof and the availability of witnesses. As to the former, there is no doubt that most, if not all, of the proof regarding the decedent's death is more accessible in England. None of the principal events surrounding the overdose took place here. It seems likely, however, that most of the evidence in the case will be in the form of witnesses' testimony. Many of the witnesses to the events surrounding the death are located in England or in Italy. But most of the plaintiff's witnesses as to damages are residents of this country, thus evening the balance.

"Jet travel and satellite communications have significatly altered the meaning of 'non conveniens.'" *Manu Int'l, S.A. v. Avon Products, Inc.*, 641 F.2d 62, 65 (2d Cir.1981), *quoting Calavo Growers of California v. Generali Belgium*, 632 F.2d 963, 969 (2d Cir.1980) (Newman, J., concurring). And videotaped depositions frequently make corporeal transportation of foreign

witnesses unnecessary. As the Second Circuit has instructed:

> [T]he assessment of whether the balance of public and private interests strongly overcomes the plaintiff's choice of forum must be made in light of the realities of modern transportation and communications. A forum is not necessarily inconvenient because of its distance from pertinent parties or places if it is readily accessible in a few hours of air travel. It will often be quicker and less expensive to transfer a witness or a document than to transfer a lawsuit.

*Id., quoting Calavo Growers,* 632 F.2d at 969 (Newman, J., concurring). *See also Fitzgerald v. Texaco, Inc.,* 521 F.2d 448, 457 (2d Cir.1975) (Oakes, J., dissenting). We conclude, therefore, that the relative inaccessibility of witnesses in this country is but a minor factor weighing in favor of dismissal.

The public factors here do counsel somewhat in favor of having the case tried in England. The *Gilbert* Court noted the "local interest in having localized controversies decided at home" and the "unfairness of burdening citizens in an unrelated forum with jury duty." 330 U.S. at 509, 67 S.Ct. at 843. Given that one of the parties here is British and one is American, the only factors which possibly "localize" this action in England are the locus of the death itself and the law on liability to be applied—neither of which is decisive.

The parties agree that British law controls the issue of liability. The Second Circuit has cautioned, however, that "we must guard against an excessive reluctance to undertake the task of deciding foreign law, a chore federal courts must often perform." *Manu Int'l, S.A. v. Avon Products Inc.,* 641 F.2d 62, 68 (2d Cir.1981); *see also Olympic Corp. v. Societe Generale,* 462 F.2d 376, 379 (2d Cir.1972); *cf. Piper Aircraft,* 454 U.S. at 260 n. 29, 102 S.Ct. at 268 n. 29 (this nondispositive factor must be balanced with all relevant factors). We should be even less reluctant than usual to apply the foreign law here, because there is no language barrier that would hamper an understanding of British personal injury doctrine.

On balance, the private interests implicated by Mrs. Rudetsky's American citizenship and her inability to afford this litigation in England outweigh the minor public factors and nominal burdens on the defendant that might make trial overseas seem more convenient.

Unpersuasive is the defendant's argument that such a conclusion necessarily leads to a nightmare extrapolation, where every overseas traffic accident involving an American resident would be tried in an American court. Such accidents remain subject to the trial court's discretion in forum non conveniens balancing. *Cf. In re: Union Carbide Corp. Gas Plant Disaster at Bhopal, India in December, 1984,* 609 F.2d 195 (2d Cir.1987). Moreover, each action, including this one, must still satisfy the requirements of personal jurisdiction in order to be heard in the court of the plaintiff's choosing.

■ Forum non conveniens doctrine is not the only protection against unfair international forum-shopping. Despite recent expansion of personal jurisdiction doctrine, long-arm statutes and minimum contacts doctrine still preserve substantial protections against shifting the world's litigations to our courts. We should be careful not simply to employ forum non conveniens doctrine where more formal jurisdiction, venue, and choice of law doctrines are appropriate. While forum non conveniens "has come to accommodate the collective shortcomings and excesses" of these other doctrines, Stein, *Forum Non Conveniens and the Redundancy of Court-Access Doctrine,* 133 U.Penn.L.Rev. 781, 784–85 (1985), it is disingenuous to "pass the buck" to forum non conveniens to resolve the dilemmas left open by those more suitable doctrines.

Plaintiff would still be subject to British liability law. Thus we cannot assume that she is merely searching for the jurisdiction with the law most hospitable to her case. *See Piper Aircraft,* 454 U.S. at 256 n. 24, 102 S.Ct. at 266 n. 24. That a Brooklyn jury may be more generous to her than a

British judge is an appropriate factor for her consideration in choosing New York over England.

There is no "odor of impermissible forum-shopping" here. *See Pennzoil Co. v. Texaco, Inc.,* —— U.S. ——, ——, 107 S.Ct. 1519, 1533, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring in judgment). The facts suggest that Mrs. Rudetsky has in good faith chosen her home forum for its convenience and other legitimate advantages, rather than "solely in order to harass the defendant or take advantage of favorable law." *Piper Aircraft,* 454 U.S. at 249 n. 15, 102 S.Ct. at 262 n. 15. The defendant's motion to dismiss on forum non conveniens grounds is denied.