NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 17-2275 and 17-2361

_____

ROBERT WALL; LINDA WALL,
Husband and Wife,
                    Appellants in 17-2361

v.

*CORONA CAPITAL, LLC;
ALTIUM GROUP, LLC


ALTIUM GROUP, LLC,
                    Appellant in 17-2275

*(Withdrawn per Court's order dated 6/21/2018)

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ. No. 2-16-cv-01044)
Honorable Mark A. Kearney, District Judge

_____

Submitted under Third Circuit LAR 34.1(a)
November 6, 2018

BEFORE:  HARDIMAN, KRAUSE, and GREENBERG, Circuit Judges

(Opinion Filed:  November 23, 2018)

———————————

OPINION[*]

———————————

GREENBERG, <u>Circuit</u> <u>Judge</u>.

## I. INTRODUCTION

These matters come on before this Court on the appeal and cross-appeal of Defendant-Appellant Altium Group LLC ("Altium") and Plaintiff-Appellees and Cross-Appellants, Robert and Linda Wall ("the Walls"), respectively. Altium challenges the District Court's orders that (1) denied its motion to dismiss this action removed from a state court to the Western District of Pennsylvania on *forum non conveniens* grounds, (2) granted summary judgment to the Walls on their breach of contract claim against Altium, and (3) denied Altium's motion for summary judgment on that claim. The order also dismissed an unjust enrichment claim that the Walls asserted against Altium as moot. In their cross-appeal the Walls challenge the District Court's calculations of damages and attorney's fees. We will affirm the Court's denial of Altium's motion to dismiss, reverse the order for summary judgment in favor of the Walls on their contract claim, reverse the order denying Altium's motion for summary judgment on that claim, and remand the case to the District Court for further proceedings on the Walls' unjust enrichment claim. Because we are reversing the grant of summary judgment in their favor on their contract claim, we will dismiss the Walls' cross-appeal from the order for damages and attorney's fees as moot.

———————————

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

## II. FACTUAL BACKGROUND

The Walls, on the advice of their financial advisor Roy D'Alessandro, approached Altium regarding the purchase of a structured settlement annuity that Altium had listed on its website. Altium is a broker of structured settlement annuities and connects sellers of such annuities with interested buyers. In the matter involved here an original defendant in this case, Corona Capital LLC ("Corona"), since dismissed as a party because the Court determined that it lacked jurisdiction over it, see Wall v. Corona Capital, LLC, 221 F. Supp. 3d 652, 657 (W.D. Pa. 2016) ("Wall I"), was a prior seller of the structured settlement annuity.[1] Corona, at least in form, obtained the annuity from Kenneth Stevens ("Stevens"), who received the annuity—issued by the New York Life Insurance Company ("New York Life")—after Stevens settled a personal injury matter in a Florida state court action.

Under Florida law, in a provision applicable in Stevens' case, a court must approve transfers of structured settlement annuities. Corona facilitated the transaction and obtained a Florida state court's approval of the transfer of the Stevens annuity to it and then sold the annuity to Altium, which, in turn, sold it to the Walls.[2] A so-called

---

[1] The Walls cross-appealed from the District Court's order dismissing Corona as a party for lack of personal jurisdiction, but have abandoned that appeal.

[2] The parties dispute whether Altium ever obtained title to the annuity from Corona. Because the issue is not dispositive, we assume, without deciding, that, as the Walls contend, Altium did obtain title and thus the transaction between Corona and Altium can be characterized as a sale. We note that the District Court said that "Altium owned the

3

master agreement that governed the Altium-Walls transaction contained a choice-of-law and a forum selection clause, stating:

> The validity, construction, and enforcement of this Agreement shall be governed by the laws of the State of New Jersey, excluding its conflicts of law provisions. In the event of a dispute concerning this agreement, the parties agree that venue lies in a court of competent jurisdiction in Monmouth County, New Jersey.

App. 379.

Two years after Altium sold the annuity to the Walls, Stevens in a Florida state court challenged the original transfer of the annuity, i.e., the transfer from him, contending that he never received notice of the transfer and did not sign the transfer papers. He further claimed that his wife had forged his signature on the documents authorizing the transfer. The Florida state court evidently accepted his contentions as it vacated the transfer, and ordered New York Life to stop making payments to the Walls on the annuity. It directed New York Life instead to make the annuity payments to Stevens' attorney.

This turn of events led the Walls to file suit against Altium in a Pennsylvania state court asserting breach of contract and unjust enrichment claims. After the case was removed to the Western District of Pennsylvania, Altium filed a motion to dismiss on *forum non conveniens* and contractually improper venue grounds, arguing that the parties had selected New Jersey as the exclusive venue for this dispute pursued to the Altium-Walls master agreement. The Court denied the motion on November 22, 2016, and also

Stevens Annuity." <u>Wall v. Altium Grp., LLC</u>, Civ. No. 16-1044, 2017 WL 1169725, at *5 (W.D. Pa. Mar. 28, 2017).

4

declined to transfer the case to another court.  See Wall I, 221 F. Supp. 3d at 660.  After

completion of discovery, the parties filed cross-motions for summary judgment.  The

Court ultimately granted summary judgment against Altium in favor of the Walls on their

breach of contract claim because the Walls had not received the stream of payments that

Altium sold them pursuant to the terms of their contract.  See Wall v. Altium Grp., LLC,

Civ. No. 16-1044, 2017 WL 1169725, at *4 (W.D. Pa. Mar. 28, 2017) ("Wall II").  The

Court dismissed the Walls' unjust enrichment claim as moot because the Walls had made

a full recovery on their contract claim.

## III.  DISCUSSION

The District Court had diversity of citizenship jurisdiction under 28 U.S.C. §§

1441 and 1332(a).  We have jurisdiction under 28 U.S.C. § 1291.  We review decisions

on motions to dismiss on *forum non conveniens* grounds for abuse of discretion.  See

Windt v. Qwest Commc'ns Int'l, Inc., 529 F.3d 183, 189 (3d Cir. 2008).  We review

contract interpretations for clear error, and contract constructions de novo.  Wayne Land

and Mineral Grp. LLC v. Del. River Basin Comm'n, 894 F.3d 509, 528 (3d Cir. 2018).

"If the contract as a whole is susceptible to more than one reading, the fact finder

resolves the matter, but if it is unambiguous and can be interpreted only one way, the

court interprets the contract as a matter of law."  Allied Erecting & Dismantling, Co. v.

USX Corp., 249 F.3d 191, 201 (3d Cir. 2001) (internal quotation marks and citation

omitted).

"Our review of the District Court's [summary judgment] decision is plenary, and

we apply the same standard as the District Court to determine whether summary

judgment was appropriate." State Auto Prop. & Cas. Ins. Co. v. Pro Design, P.C., 566 F.3d 86, 89 (3d Cir. 2009). "Thus, summary judgment is properly granted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Sconiers v. United States, 896 F.3d 595, 597 n.3 (3d Cir. 2018) (quoting Fed. R. Civ. P. 56(a)).

A. Motion to Dismiss

Altium challenges the District Court's denial of its motion to dismiss on *forum non conveniens* grounds. But notwithstanding the contractual venue clause, Altium does not argue that the Walls as a matter of law mislaid venue in the Western District of Pennsylvania.[3] It could not plausibly have advanced that contention because the Supreme Court has held that a court determines whether venue is appropriate solely on the basis of the applicable statutes, and forum selection clauses do not deprive courts of venue in actions brought in undesignated forums. Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex., 571 U.S. 49, 57, 134 S.Ct. 568, 578 (2013). "Instead, the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the application of the doctrine of *forum non conveniens*," id. at 60, 134 S.Ct. at 580, which was the exact course that Altium followed in the District Court.

The District Court initiated its *forum non conveniens* analysis by addressing the issue of whether the forum selection clause was mandatory or permissive. This was an important consideration because, under Atlantic Marine, the presence of a mandatory

---

[3] Actually the Walls did not lay venue in the Western District of Pennsylvania as they filed suit in a state court. The case was removed to the federal court.

6

forum selection clause is a significant factor in a *forum non conveniens* analysis. "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum." Id. at 64, 134 S.Ct. at 582. "As a consequence, a district court [in making such an analysis] may consider arguments about public-interest factors only. Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." Id. (citation omitted).

Analyzing the contractual language, the District Court found that the forum selection clause did not mandate that a party bring a suit arising from the master agreement only in Monmouth County, New Jersey. It held that "[a] mandatory forum selection clause provides venue is proper only in the identified forum. A permissive forum selection clause authorizes venue in the selected forum." Wall I, 221 F. Supp. 3d at 658. It further held that "[t]he Walls' forum selection clause . . . authorized venue in Monmouth County, New Jersey over contract disputes but the clause does not exclusively limit the forum. The parties agreed to a permissive venue selection clause." Id.

The language of the forum selection clause supports the District Court's conclusion whether the mandatory-permissive inquiry is viewed as involving contractual construction or contractual interpretation. Even though the clause stated "the parties

7

agree that venue lies in a court of competent jurisdiction in Monmouth County, New Jersey" it simply did not state that venue could be laid only in Monmouth County.[4]

We also point out that Altium did not offer evidence supporting an argument that the parties' intent in adopting the venue clause was contrary to the District Court's conclusion holding the forum selection clause to be permissive. Because we hold that the language supported, indeed required, the Court to read the clause as it did, we cannot find any error in the Court's conclusion that it was permissive.

Directly addressing the *forum non conveniens* issue, we conclude that the District Court did not abuse its discretion when it declined to dismiss the case on the basis of that doctrine. The Court conducted the proper balancing test in making its ruling, giving due deference to the Walls' choice of forum. See Bhatnagar v. Surrendra Overseas Ltd., 52 F.3d 1220, 1226 n.4 (3d Cir. 1995) ("Ordinarily, a plaintiff's choice of forum is entitled to great deference[.]"). "The *forum non conveniens* determination is committed to the

---

[4] Altium cites to our non-precedential decision in Wall St. Aubrey Golf, LLC v. Aubrey, 189 F. App'x 82, 85-86 (3d Cir. 2006), for the proposition that a forum selection clause need not use words explicitly denoting exclusivity to be considered mandatory. Though we do not disagree with that proposition, the Wall Street opinion does not constitute binding authority. I.O.P. 5.7. In any event, the clause in Wall Street was materially different than the forum selection clause here. The clause in Wall Street stated that "[t]his Lease shall be construed in accordance with the laws of the Commonwealth of Pennsylvania, with venue laid in Butler County, Pennsylvania." 189 F. App'x at 85. We held that the mandatory term "shall" applied to both the choice-of-law provision and the subordinate forum selection provision in the same clause. Id. at 86. In our case, however, the choice-of-law and the forum selection provisions were separate and independent—indeed, the forum selection clause began in a new sentence with the phrase "[i]n the event of a dispute concerning this agreement," signifying that the phrase stood on its own. We conclude that the contractual language supported the District Court's understanding of the venue provision as permissive and was in full accord with the applicable language in the master agreement.

8

sound discretion of the trial court." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257, 102 S.Ct. 252, 266 (1981). "[T]he district court is accorded substantial flexibility in evaluating a *forum non conveniens* motion, and '[e]ach case turns on its facts.'" Van Cauwenberghe v. Biard, 486 U.S. 517, 529, 108 S.Ct. 1945, 1953 (1988) (quoting Williams v. Green Bay & Western R. Co., 326 U.S. 549, 557, 66 S.Ct. 284, 288 (1946)). Accordingly, we will affirm the Court's denial of Altium's motion to dismiss on *forum non conveniens* grounds.

B. Summary Judgment

Altium also challenges the District Court's grant of summary judgment to the Walls on the merits of the case. In granting summary judgment, the Court held that the contract between Altium and the Walls for transfer of the Stevens annuity promised the Walls "60 monthly payments of $3,000.00 from 6/1/2014 to 5/1/2019 with 3% annual increase in payments" in exchange for a lump-sum price of $152,833.37. Wall II, 2017 WL 1169725, at *3. As such, the Court found that "as a matter of law, Altium breached its duty under the Agreement because the Walls never received the 60 monthly payments or their $152,833.37 returned from Altium." Id. at *4.

Though the District Court's factual conclusions were accurate, we reject its legal conclusions. The Court misconstrued the transaction between Altium and the Walls. We recognize that the master agreement between Altium and the Walls recited that the parties' intent was "to establish the terms and conditions under which [Altium] will convey such streams of payment to [the Walls,] and [the Walls] will purchase such streams of payment from Altium." App. 376. But the contract for the transfer of the

9

Stevens annuity listed the issuer of the annuity as New York Life. Therefore, the Walls knew or should have known that they had to look to New York Life and not Altium for the monthly payments. Altium merely sold the rights to the underlying financial asset, a structured settlement annuity providing for a stream of payments, to the Walls. The underwriter and guarantor of the annuity was New York Life, not Altium. It is not the same thing to sell a stream of payments and to agree to make a stream of payments.

The asset purportedly was transferred from its original owner, Stevens, to Corona, then to Altium, and ultimately to the Walls. In these transactions, Altium did not breach a contract with the Walls because it fulfilled the terms of its contract, the delivery to the Walls of the rights to the annuity payments guaranteed by New York Life. It satisfied that obligation and we have no reason to believe that if Stevens had not challenged the original transfer New York Life would not have made the monthly annuity payments to the Walls. Moreover, a Florida state court authorized the original transfer of the annuity. Furthermore, for all we know New York Life is still making the annuity payments as the Florida state court directed and will continue to do so until the maturity date of the annuity on May 1, 2019. Further, it is clear that Altium did not make any promise or guarantee of the future performance of the financial asset, and, indeed, in our review of the Altium-Walls documents we could not find any such promise or guarantee.

The contract language is instead consistent with that of a true sale without recourse: (1) it states that the Distributor desires to "sell" the right to receive; (2) the Walls are labeled a "Purchaser"; (3) Altium is labeled a "Distributor"; (4) the contract is titled "Contract to *Purchase* Payment Rights"; and (5) the parties defined a "purchase

10

price." App. 381 (emphasis added). See, e.g., Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co., 336 F.3d 410, 414-15 (3d Cir. 2003) (explaining that certain language in contract at issue referring to "sell[ing]" accounts and defining a "purchase" price was "characteristic of a sale of accounts" without recourse instead of a sale with recourse). And there are no indicia of a guarantee here. For instance, there is no language expressly giving the Walls recourse against Altium, and there is nothing in the contract indicating that the parties intended for Altium to bear the risk of nonpayment of the annuity payments which can be regarded as the same as receivables under a contract. See, e.g., Classic Harvest LLC v. Freshworks LLC, 158 F. Supp. 3d 1317, 1326-27 (N.D. Ga. 2015) (explaining that assumption of "less than the full risk of loss" on the receivables is inconsistent with a "true sale" of receivables). Altium sold a structured settlement annuity to the Walls in a contract without a provision by which Altium promised or guaranteed that the annuity payments would be made.

The problem for the Walls, of course, was that even assuming that the Walls received title to the annuity, a reasonable assumption if we accept, as we do, that Altium, as the Walls claim, previously had held title to the annuity, the validity of the title was not guaranteed. The original seller of the asset, presumably Stevens' wife, transferred the annuity to Corona pursuant to a court order obtained through fraud so the transfer could not survive Stevens' claim even if New York Life would have made all the annuity payments to the Walls if Stevens had not challenged the original transfer. We make this statement with respect to New York Life making the payments even though "a bona fide purchaser of personal property taken tortiously or wrongfully, as by trespass or theft,

11

does not acquire a title good against the true owner." Kutner Buick, Inc. v. Strelecki, 267 A.2d 549, 554 (N.J. Super. Ct. Ch. Div. 1970); see Shaw v. Railroad Co., 101 U.S. 557, 564-65 (1879); O'Keeffe v. Snyder, 416 A.2d 862, 867 (N.J. 1980) ("[T]he thief acquired no title and could not transfer good title to others regardless of their good faith and ignorance of the theft."). Fraud in the initial transfer was the underlying reason the Florida state court rescinded its order approving the transfer to the Walls. App. 455-57.

The District Court suggested that Altium may be liable because its attorney had an opportunity to review the transfer of title to the annuity from Corona to Altium. Wall II, 2017 WL 1169725, at *4. In this regard, we realize that in the Altium-Walls agreement, Altium represented to the Walls that it "has obtained its own independent professional due diligence review and approval of the transaction." App. 378. But we do not see how this clause can change our result because the Walls do not charge that Altium did not obtain that review and approval just as it represented. Moreover, whatever the extent of Stevens' wife's deceit, it was enough to convince a state court in Florida to approve the transfer. The District Court did not explain why Altium's attorney was in a better position to uncover the fraud than the state court.

## IV. CONCLUSION

We do not address the question of whether the Walls may have recourse against any individual or entity not a party to this appeal or even against Altium on the unjust enrichment claim that we are reinstating and remanding for disposition. Our decision today is limited to holding that the District Court did not err when it rejected the *forum non conveniens* motion to dismiss but did err in determining that Altium is liable to the

12

Walls for breach of contract.  Thus, we will affirm the Court's order of November 22, 2016, denying the motion to dismiss this action on *forum non veniens* grounds, but will reverse its order of March 28, 2017, granting the Walls' motion for summary judgment and denying Altium's motion for summary judgment on the breach of contract claim. We will dismiss the Walls' cross-appeal as moot and will remand the case to the District Court for further proceedings on the Walls' unjust enrichment claim.  We also will vacate the Court's subsequent orders entered on April 19, 2017, and May 10, 2017, clarifying the judgment amount and awarding attorney's fees, costs, and prejudgment interest.  The parties will bear their costs on this appeal.